GERMAN SAVINGS INSTITUTION *v.* ADAE and others.

*(Circuit Court, E. D. Missouri.*    March 29, 1880.)

1. EFFECT OF CHECK AS BETWEEN DRAWER AND PAYEE—EQUITABLE ASSIGNMENT.

A check or draft drawn upon a fund more than sufficient to pay it, operates as an equitable assignment of the amount therein specified, as between the drawer and payee.

2. PRINCIPAL MAY RECOVER HIS PROPERTY FROM AGENT.

A principal may follow his property into the hands of his agent, or his agent's assignee, and recover it, or its proceeds.

3. SAME—ASSIGNEE.

An assignee for general creditors can assert no claim not good in the hands of his assignor.

4. CHECK—EQUITABLE ASSIGNMENT—ASSIGNEE—BILL OF INTERPLEADER.

A. collected $1,072 for B., and sent B. a check therefor on C., a bank, on the sixteenth day of the month, and charged himself with said amount in his account with C. On that day and on the 18th following, A. had on deposit with C. more than sufficient money to meet the check. On the 18th, A. made an assignment, for the benefit of his creditors, to E. and F., who immediately accepted the trust. On the 19th, C. received notice of the assignment. On the same day B. received the check and presented it to C. after it had received said notice. Payment was refused. Thereafter C., by bill of interpleader, asked the decision of the court as to the disposition of the fund. E. and F. claimed it all. B. claimed amount called for by his check. *Held,* that as between A. and B. the check operated as an equitable assignment, and that the amount thereof should first be paid to B. out of the fund, and the balance, after payment of costs, should go to the assignees.

5. SAME.

*Held, also,* that if the court had not considered the check an equitable assignment of the fund, it would have made the same decree on the ground that A. held the fund for B. as the proceeds of a collection made as B.'s agent.

In Equity.    Bill of interpleader.

The facts of the case are sufficiently stated in the opinion, except that the character of the instrument referred to therein as a "bill of exchange, (or check,)" is left somewhat indefinite.    Said instrument is in words and figures as follows:

No. 37,230.                          GERMAN SAVINGS INSTITUTION,    }
                                     CINCINNATI, December 16, 1878.  }

$1,072.

"Pay to the order of H. L. Newman & Co., ten hundred and seventy-two dollars, in currency.

"*To German Savings Institution, St. Louis, Mo.*

                                         "C. F. ADAE & Co.
                                         "M.. M. ADAE."

*Finkelnburg & Rassieur,* for complainant.

*Noble & Orrick,* for defendants.

McCRARY, C. J. This case is submitted upon an agreed statement of facts, from which it appears:

(1) That on the sixteenth day of December, 1878, the firm of C. F. Adae & Co., bankers, at Cincinnati, Ohio, being indebted to their correspondents, H. L. Newman & Co., at East St. Louis, Illinois, made and forwarded their certain bill of exchange, (or check,) of that date, on the German Savings Institution, a bank in St. Louis, for $1,072, to the order of said H. L. Newman & Co., the same being proceeds of a collection theretofore made by said Adae & Co. in the ordinary course of business between them and the said H. L. Newman & Co.

(2) The said bill of exchange, received by said Newman & Co. on the nineteenth day of December, 1878, and about noon of that day, was presented at the banking house of said German Savings Institution for payment, which was refused.

(3) On the eighteenth day of December, 1878, the said C. F. Adae & Co. became insolvent, and on that day, at Cincinnati, Ohio, made an assignment in writing of all their property to Augustus Bennett and Philip Henry Hartman, in trust, for the benefit of their creditors, which assignment and trust was on the same day accepted by said assignees.

(4) Upon making said bill of exchange, December 16th aforesaid, said Adae & Co. charged themselves with the amount thereof in their general account with the German Savings Institution.

(5) On December 16th the amount on deposit with said German Savings Institution, to the credit of Adae & Co., was more than the sum of said bill of exchange; and on December 18th, at the time of said assignment to Bennett and Hartman, the balance on deposit, as owing from it to and the property of said Adae & Co. on said general account, was $4,037.25.

(6) Notice of the assignment to Bennett and Hartman was received by the German Savings Institution on the nineteenth day of December, before the presentation for payment of said bill, and by reason thereof payment was refused. The German Savings Institution, by bill of interpleader, asks the direction of this court as to the proper disposition of said fund. Bennett and Hartman, as assignees, claim the entire fund under the assignment from Adae & Co. to them. Newman & Co. claim a portion thereof under the bill of exchange executed to them by said Adae & Co. on the sixteenth of December for $1,072.

The controversy is thus seen to involve the question whether the execution and delivery of the bill of exchange for $1,072 was in equity, in view of the facts above recited, an assignment *pro tanto* of the fund in question. It has been frequently decided that the holder of a check drawn on a bank cannot sue the bank for refusing payment of it, in the absence of proof that it was accepted by the bank or charged against the drawer. *Bank of Republic* v. *Millard*, 10 Wall. 152; *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Thompson* v. *Riggs*,

5 Wall. 663; *Rosenthall* v. *Mastin Bank*, 21 Alb. Law J. 28, and cases cited.

If, therefore, this were an action by a check-holder against the bank upon the check, there could be no recovery. But such is not the case. This is a bill of interpleader in equity, by which the plaintiff, a bank holding the fund in question, declares its readiness and willingness to pay as the court may order, and the controversy is as to the equities of the other parties who are adversary claimants of the fund. The rule which protects a bank from being harassed by suits brought by check-holders has no application to a case of this character. We are at liberty, therefore, to inquire, which of the claimants here has the better right in equity to the fund in question? There are undoubtedly numerous respectable authorities which sustain the doctrine that the execution of a check in the ordinary form, not describing any particular fund, does not operate as an assignment, equitable or otherwise, of funds of the drawer in the hands of the drawee. *Attorney General* v. *Insurance Co.* 71 N. Y. 325, and cases there cited; *Randolph* v. *Canby*, 2 N. B. R. 296.

But, on the contrary, it was held by this court in *Walker* v. *Siegel*, 2 Cent. Law Jour. 508, that the rule thus broadly stated seems to apply only to cases at law, and that "such an order, as soon as notice is given to the drawee, works an assignment in equity;" and this view is well sustained by authority. *Roberts* v. *Austin*, 26 Iowa, 315; *Forgarties* v. *State Bank*, 12 Rich. L. Rep. (S. C.) 518; *Munn* v. *Burch*, 25 Ill. 35, 1 Daniell, Neg. Inst. p. 20, § 23; Willard's Equity Jur. (Potter's Ed.) 464.

There is certainly no good ground for holding that a check or a draft, drawn upon a fund in bank, is not an equitable assignment as between the drawer and payee; and in a case where there is no controversy as to the rights of the bank or drawee, it does not lie in the mouth of the drawer, or his assignee, to say that such an instrument is not an equitable assignment. If it were conceded that, as a general rule, a check drawn upon a part of a fund in bank will not of itself operate as an assignment *pro tanto*, it is very clear to my mind that this is a case which a court of equity might well regard as an exception to any such general rule. As already suggested, the holder of the fund has come voluntarily into a court of equity, bringing the fund with him, and, disclaiming all interest in it, asks the court to dispose of it, as between the check-holder and the assignee, according to equity. It is a case, too, in which it appears that in equity the

fund was the property of Newman & Co. before the check was executed, being the proceeds of a collection made for them by Adae & Co. As between the parties who are now claiming this fund, a court of equity would have decreed the payment of it to Newman & Co. on the ground that Adae & Co. held it for them, as the proceeds of a collection made as their agents, and therefore proceeds of their property. *Superintendent, etc.,* v. *Heath,* 2 McCarter, (N. J.) 22; *Overseers of the Poor* v. *Bank of Va.* 2 Gratt. 544. It is well settled that the principal may follow his property into the hands of his agent or factor, and recover it, *or its proceeds,* from him. *Veil* v. *Adm'r of Mitchell,* 4 Wash. 105; *Bank* v. *King,* 57 Pa. St. 202; *Buch* v. *Forsyth,* 14 Bush, 499; *Cook* v. *Tallis,* 18 Wall. 332.

An assignee for general creditors can assert no claim that was not good in the hands of his assignor. *Roberts* v. *Austin,* 26 Iowa, 315; *Hagerty* v. *Pulmer,* 6 John. 437; *Walker* v. *Miller,* 11 Ala. 1067; *Clark* v. *Flint,* 22 Pick. 231; Burrill on Assignments, 483, 484, and authorities cited.

If there had been no assignment, and this were a controversy between Adae & Co. and Newman & Co., it would, I apprehend, hardly be contended that the right of the latter to a decree for the money could be questioned. Such a decree would only give them their own,—the proceeds of their property, to-wit, certain choses in action left with their agent, Adae & Co., for collection, and by them collected. As the assignees can assert no claim as purchasers, and have no equities which did not belong to the assignors, I am clearly of the opinion that the defendants Newman & Co. are entitled to a decree for the amount of the face of their bill of exchange, to-wit, $1,072. The balance of the fund, after payment of costs, should go to the assignees.

Decree accordingly.