# FIRST NATIONAL BANK OF CINCINNATI *et al. v.* KERSEY COATES *et al.*

(*Circuit Court United States, Western District of Missouri, May Term, 1881—In Equity.*)

1.  BANK CHECK.  An order drawn at Kansas City, Missouri, on a bank in New York City, to pay money to H. C. or order on demand, without days of grace, is a bank check.

2.  SAME—EQUITABLE ASSIGNMENT OF PART OF DRAWER'S FUND ON DEPOSIT.  Where the depositor of a fund in a bank draws his check for a part of that fund, which is presented in due time, this is an appropriation, and an equitable assignment of so much of the fund as is called for by the check, although no action at law could be maintained upon it.

3.  SAME—SAME—ASSIGNMENT FOR BENEFIT OF CREDITORS.  Where a debtor, having a large fund in bank, drew his checks in favor of certain creditors, and thereafter, before said checks were presented, made a general assignment of all his property for the benefit of his creditors, under a State insolvent law: *Held*, that the checkholders who presented their checks and demanded payment, while the fund remained in the hands of the bank, were entitled to payment as against the assignee.   The checks amounted to an appropriation of so much of the fund on which they were drawn, and, to that extent, it did not pass to the assignee.

4.  PRESENTATION OF CLAIM TO ASSIGNEE—ELECTION OF REMEDY. The presentation by the checkholders of their claims to the assignee, and his allowance of them, and their receipt of dividends under the assignment, was not the election by them of a remedy which prevents a recovery in this case.

The Mastin Bank was a banking corporation at Kansas City, Missouri, and, at various dates between the 27th day of July and the 2nd day of August, 1878, made and delivered to the complainants in these cases its drafts or checks on the Metropolitan National Bank of New York.

These instruments were in the following form, differing from each other only in dates, name of payee, and amount:

"$1,979.50.        STATE OF MISSOURI.        No. 196219.
                    "THE MASTIN BANK,

                            KANSAS CITY, MO., Aug. 2, 1878.
"Pay to the order of H. Colville, cashier, nineteen hundred and seventy-nine dollars and fifty cents.

                            "D. O. SMART, *V. Pres't.*
"To METROPOLITAN NATIONAL BANK, NEW YORK."

On the 3rd day of August, 1878, the Mastin Bank made an assignment to the defendant Coates of all its property and effects, for the equal benefit of all its creditors, in conformity to the laws of the State of Missouri relative to voluntary assignments.

On the morning of August 5th, before business hours, the Metropolitan National Bank was notified of the assignment by a telegram from the assignee. At the time of receiving this notice, the last named bank had in its hands on deposit, to the credit of the Mastin Bank, about $57,000. It had for many years been the New York correspondent of the Kansas City Bank. After the receipt of this notice, it paid no drafts drawn by the Mastin Bank. Those on which these actions were based were presented for payment on the 5th, 6th and 7th days of August; payment of them was refused, and they were protested.

In September, 1878, the funds so on deposit in the Metropolitan Bank, were by it turned over to the defendant Coates as assignee. The assignment law of Missouri provides that all claims against the assignor shall be presented to the assignee for allowance on days to be fixed by him. At that time the complainants presented their drafts, which were allowed by the assignee as general claims against the estate, to be paid *pro rata*. The complainants made no objection to the allowance in that manner, but afterwards accepted two dividends from the assignee, declared by him on all claims alike, for five and twelve per cent. respectively. Subsequently these bills were filed, to have a trust declared in

favor of the complainants, upon the funds so turned over to the assignee, and for payment in full of their drafts out of such funds.

There were about $80,000 of unpaid outstanding drafts drawn on the Metropolitan Bank, and actions similar to these, involving in all about $22,000 only, had been brought at the time of this hearing.

For the assignee, it was insisted that the moneys received by him from the New York bank belonged to the general funds of the estate, and that the complainants must come in as general creditors; and further, that the presentation of their claims to the assignee, his allowance of them as general demands, and their acceptance from him of dividends on such allowances, constituted an election on their part to be treated as general creditors, and that such election was a complete bar to the relief sought by these bills.

MILLER, Circuit Justice (orally)—

My first impression was, that the paper which is called indifferently a draft, a bill and a check, and on which these actions are founded, was in the nature of a bill of exchange, and not in the nature of a bank check; but the authorities presented have satisfied me that I was wrong. Even an inland bill of exchange, payable on demand, without days of grace, is a check of one bank on another, and, whatever may have been my original opinion, the authorities have settled that, and I must hold it to be a bank check.

I think the authorities have also settled—perhaps not with unanimity, but with such weight as to guide us here—that a bank check is drawn directly against money in the hands of the bank, which belongs to the drawer of the check as depositor. Not that any particular money is his, but he has funds in the bank, against which he draws that check. If he has no funds, his check amounts to nothing. It is therefore an order to pay the holder so much out of my money in your hands. These authorities say it is an appropriation of that much of the fund. The nature of the transaction is this: I have so much money in the bank; to be sure, it is the bank's money, but it is a fund deposited to my credit. I draw a check in favor of A B for one hundred dollars; that is a direction to the bank to pay A B one

hundred dollars out of that fund, and the books call that an appropriation of that much of it.

The question is, whether this is an appropriation in equity of that much of that fund in favor of the payee, or a mere obligation of the drawer. It is said it is not the former, because the payee or holder of the check cannot bring suit against the bank for the money, and, therefore, it is not an equitable assignment of that much of the fund. But that argument is founded on a misconception, or want of proper understanding of the doctrine of equitable assignments. The very word "equitable assignment" is used because the assignment is only recognized in a court of equity, and not in a court of law. If it were recognized in a court of law, it could be enforced there, and we would never have heard of any such word as " equitable assignment." Therefore, it is an assignment of that much of the debt which a court of equity will recognize and a court of law will not. The reasons for this are obvious. One reason, as stated in the argument here, was, that there was no privity between the payee of the check and the bank on which it was drawn. And that is true. At law there is no such privity. Another reason is, that a man may owe another several thousand dollars, which is due, or to become due, and the creditor may draw in various sums and at various times for that money, which, between the parties, is intended as an appropriation of that much of the fund. But the drawee, or the man who holds the fund, says, "I don't want to be annoyed with all these drafts. I owe the drawer $5,000, due the 1st of November, and I will make the payment, once for all, to him. I will not be troubled with twenty or thirty creditors, instead of one." In law that is his right; but a court of equity looks at it differently. It says, here is a fund that originally belonged to A, but there are claims against it of B, C, D, E and F, of which the debtor has notice, and they can have these amounts of money appropriated to them. That is the difference between the powers of a court of law and a court of equity, and that is why these are called equitable assignments. Courts of equity say they are a lien upon that fund, which they will enforce.

The fund has been transferred to Mr. Coates, and he is now the holder of it, and the Court can get hold of Mr. Coates, and he holds subject to this liability. This fund, having been appropriated by these checks, duly presented, did not pass by the as-

signment; the fund on which they were drawn, to that extent, did not pass by the assignment, as the general property of the bank, into the hands of Coates, the assignee, but, when he got it, he held it subject to the lien established on it, by the drafts of which he had notice, with demand of payment. The result of that is, that these drafts are, each of them, an appropriation of that much of the fund, and the complainants are entitled to recover their face, less the amounts which they have received in dividends from the assignee.

Nor was their presentation to the assignee, and his allowance of them, and the receipt by the ccmplainants of the dividends, the election by them of a remedy which prevents a recovery here. The remedies are not inconsistent.

There is no evidence that the assignee will ever be called upon to account for an excess of the fund. He can at any time file his bill, requiring everybody to come in with their claims for amounts unpaid.

In the case of the Reno County Bank, a question is raised, whether the fact that the amount of the draft was placed to the credit of that bank on the books of the Mastin Bank did not change the relations of the parties into that of ordinary debtor and creditor. But as the transmission of the draft in favor of the Reno County Bank was accompanied by the direction of that bank to transfer the amount to its correspondent bank in New York, and as the Mastin Bank attempted to do this by its draft on the Metropolitan Bank, I am of opinion that this latter draft, or check, was an appropriation of that much of the fund of the Mastin Bank as in case of other drafts or checks.

Decrees must be rendered for complainants in each case.

*Note.*—See *German Savings Institution* v. *Adae,* 1 McCrary, 501; *Walker, Assignee,* v. *Siegel,* 2 Cent. L. J., 508; *Roberts* v. *Austin, Corbin & Co.,* 26 Iowa, 315; *Fogarties* v. *Bank,* 12 Rich. L. R. (S. C.), 518; *Mann* v. *Burch,* 25 Ill., 35; 1 Daniels on Negotiable Instruments, p. 20; Willard's Eq. Jur., Potter's Ed., 464.

*Gage & Ladd,* for complainants.
*Pratt, Brumback & Ferrey,* for defendants.