Weiand's Admr. v. State Nat. Bank of Maysville.

CASE 30—ACTION TO RECOVER DAMAGES FOR DEFENDANT'S REFUSAL TO
PAY A CHECK—DEC. 12.

# Weiand's Admr. v. State National Bank of Maysville.

APPEAL FROM MASON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    REVERSED.

BANKS—CHECK—WHAT CONSTITUTES—EXCEEDING DEPOSIT—ELECTION
NOT TO PAY—RECONSIDERATION—REVOCATION OF CHECK—DEATH
OF DRAWER.

Held:    1. An order addressed to a bank to pay a certain sum of
money is a check.

2. Where a bank, upon which a check was drawn in excess of
the amount the drawer had on deposit, elected, as it had the
right to do, to refuse to pay any part of the check, and re-
turned it to the payee protested for non-payment, it had no
right thereafter, to reconsider and pay the check, especially af-
ter the administrator of the drawer notified it of the death
of his intestate, and directed it not to make payment.

3. The drawer of a check may revoke it at any time before
its presentation for payment.

4. The death of the drawer operates as a revocation of a check,
so that if a bank pays it after notice of that fact, it does so
at its peril.

A. E. COLE & SON, FOR APPELLANT.

Appellant's intestate, Anthony Weiand, doing business as
A. Weiand & Co., on August 15, 1900, issued and sent to the
John Hauck Brewing Company, of Cincinnati, a check on ap-
pellee bank for $360, having on deposit to his credit therein,
only $199, but instead of dating the check August 15, he
post dated it, August 20. On August 19, he died, still hav-
ing on deposit in said bank $199. On August 21, appellant
qualified as his administrator, of which fact appellee had
notice; and when said check was on that day for the first time
presented to appellee for payment, assurances were then given
that his direction should be followed and the check return-
ed unpaid, and thereafter appellee protested the check and re-
turned it to the payee unpaid.    Thereafter appellant drew a

check for said fund on deposit, payable to R. K. Hoeflich, cash-- ier, for the use of the bank of Maysville; which was hon- ored by the bank of Maysville and by it duly presented, prop- erly indorsed, to appellee for payment, but payment was wantonly refused, appellee claiming that it did not owe appel- lant anything, and that notwithstanding its previous assur- ances and act of protest, it had subsequently transmitted to the payee of said protested check the aforesaid sum of money, by which appellant has been damaged, as is admitted, in the sum of $500.

The question, therefore, now presented is, Did appellant have a right to sue for the deposit and incidentally to recover the admitted damages upon appellee's refusal to honor his check therefor?

We claim that if the writing was a check it did not equitably assign the deposit to the payee, and that the death of the drawer, of which the appellee had notice, operated as a revocation of the check.

We insist that the lower court erred in sustaining a demur- rer to the appellant's petition and that appellant is entitled to recover said money with damages.

## AUTHORITIES CITED.

Am. & Eng. Ency. Pr., vol. 12, p. 1026; Am. & Eng. Ency. of Law (2d ed.) vol. 5, pp. 1032, 1059-60, 1080; Brown v. Story, U. S., 511, Lester & Co. v. Givens, &c., 8 Bush, 359; Pabst Brewing Co. v. Rives, 42 Ill. App. 54; Rouse v. Calvin 76 Ill. App., 362; Dana v. 3d Nat. Bank, 13 Allen (Mass.) 445; Buckner v. Sayre, 18 B. Mon., 756; Farmers' Bank & Trust Co. v. Newlands, 97 Ky., 473; Edwards on Bills, 546; Byles on Bills, 5 Am. Ed., 101; Tramell v. Farmers' Nat. Bank, 11 Ky. Law Rep., 1900; Morse on Banking, Par., 260; Chitty on Bills (13 Am. Ed.) 484; Benjamin's Chalmers Bills, Notes and Checks (2d Am. ed.) 273; Rogerson v. Ladbroke, 1 Buey N. C., 93; Tate v. Hilbert, 2 Ves. Jr., 111 or 118; Gardner v. First Nat. Bank, 10 Mont., 149.

L. W. ROBERTSON, FOR APPELLEE.

(No brief in record.)

OPINION OF THE COURT BY JUDGE GUFFY—Reversing.

This action was instituted in the Mason circuit court by the appellant on the 30th of August, 1900. It appears that E. H. Roden, as the administrator of Anthony Weiand,

sought in this suit to obtain judgment against the appellee for the sum of $199, besides $500 damages, on account of appellee's failure to honor appellant's check. It is substantially alleged in the petition that Anthony Weiand departed this life August 10, 1900, and that prior to his death he did business under the firm name and style of A. Weiand & Co., and had on deposit with appellee at the time of his death, and which was so entered on the books of defendant bank to the sole credit of decedent, the sum of $199; that on or about August 15, 1900, said decedent issued and dated in advance, and sent to the John Hauck Brewing Company, a corporation in Cincinnati, Ohio, a certain instrument of writing in the following language: "Maysville, Ky., August 20, 1900. The State National Bank: Pay to the order of the John Hauck Brewing Company the sum of three hundred and sixty dollars. [Signed] A. Weiand & Co., by Lillie B. Weiand, Agt. $360.00." It is alleged that said writing was a bill of exchange drawn on defendant, but was not presented to defendant for payment until after the death of decedent, and when same was, on August 21, 1900, presented, he notified the defendant of the death of his intestate, and directed it to return the said instrument of writing to the payee unpaid; that defendant promised to do so, and thereupon caused said writing to be protested for nonpayment and returned same unpaid; that, relying upon the fact of said protest and return of said writing and the notice to defendant, he, on August 29, 1900, gave to R. K. Hoeflich, cashier of the Bank of Maysville, a check for said deposit in the following language: "Maysville, Ky., August 29, 1900. The State National Bank: Pay to the order of R. K. Hoeflich, cashier, one hundred and ninety-nine dollars. [Signed] A. Weiand & Co., by E. H. Roden, Administrator of A. Weiand

& Co." It is further alleged that said check to Hoeflich was honored by the Bank of Maysville, and by it duly presented to defendant during its banking hours for payment, but defendant refused, and still refuses, to pay same; that by reason of defendant's failure to pay said check, he was compelled to, and did, account to said Hoeflich therefor, and suffered impairment of his credit as personal representative, and the management of said estate to be brought in question, and also being hampered and embarrassed in the settlement of his said intestate's affairs, and prevented from making an adjustment and compromise with the creditors of his intestate, to the damage of said estate in the sum of $500. Judgment was prayed for for the $199 and for the $500. In an amended petition filed, it is alleged that plaintiff's check to said Hoeflich, cashier, was for the use and benefit of the Bank of Maysville, with whom as such, he has been compelled to account, and has accounted, for the defendant's nonpayment of said check, and it was indorsed by said Bank of Maysville before presentation thereof to defendant, during its banking hours for payment; that defendant refuses payment of said check, claiming that it does not owe plaintiff the amount of said deposit for which said check was drawn, and has, since plaintiff's said notice and its protest, paid said deposit to the John Hauck Brewing Company. The defendant filed a demurrer to the petition as amended, which demurrer was sustained by the court; and, plaintiff declining to plead further, the petition was dismissed, and from that judgment appellant prosecutes this appeal.

The contention of appellee is, in effect, that the giving of the check of decedent was an appropriation of the $199 for the benefit of the payee; and that notwithstanding the

fact that appellee protested the check and had notice of the
death of the drawer, and also that appellant revoked, or
assumed to revoke, the check, and forbade its payment
thereof, and Lester v. Given, 8 Bush, 357, Deatheridge v.
Crumbaugh, 8 Ky. Law Rep., 592, and Rosenbaum v.
Lytle, 8 Ky., Law. Rep., 607, are cited by appellee in
support of its contention.  It may be taken as true that
the paper in question in this action is what is termed
a "check" in the case above referred to, and we will there-
fore consider it as a check, and not a bill of exchange.  It
appears that R. L. Cobb & Sons gave a check to James
Lester & Co. for $220, addressed to Given, Jones & Co.;
and it further appears that Cobb & Sons had that amount
of money belonging to them in the hands of the said Given,
Jones & Co., who refused to pay same.  Lester & Co. in-
stituted suit against the defendant bank.  Given, Jones
& Co.; and the court sustained the demurrer of the de-
fendant to the petition, from which judgment Lester &
Co. appealed.  The question presented to and decided by
the court was whether the payee of the check could main-
tain an action against the drawee, the latter not having
accepted the check.  In discussing the question, the court
said:  "The paper under consideration is emphatically a
check, differing from an ordinary bill of exchange in the
following particulars:  First, it is drawn on bankers, as is
alleged, and is payable immediately on presentment, with-
out any days of grace; second, it is payable immediately
on presentment, and no acceptance, as distinct from pay-
ment, is required; and, third, by its terms it is supposed
to be drawn upon a previous deposit of funds, and is an
absolute appropriation of so much money in the hands of
the bankers to the holder of the check, to remain there
until called for, and can not, after notice, be withdrawn

by the drawer. These are the distinguishing characteristics between a check and an ordinary bill of exchange, as pointed out in Story, Prom. Notes, section 489; and some of the legal consequences of this difference are that the holder of a check, though taken some days after its date, takes it free from all equities, because it is never treated as overdue, being payable on presentment or demand, whereas it is a well-known rule of law that a bill of exchange or promissory note, taken after the day of payment, or when it is overdue, as the common phrase is, subjects the holder to all the equities attaching to it in the hands of the party from whom he receives it. In the next place, the drawer of a bill of exchange is liable for payment thereof only on condition that it has been duly presented for payment at its maturity and dishonored, and he has received due notice of its dishonor; and in either case it makes no difference whether he has suffered any loss or injury thereby or not. In case of a check, the drawer is treated as in some sort the principal debtor, and he is not discharged by any laches of the holder in not making due presentment thereof, or in not giving him notice of the dishonor, unless he suffered some loss or injury thereby, and then only *pro tanto*. Id. sections 491, 492. As, therefore, no acceptance of a check is required, from the nature of the paper, it must follow that, if the holder can have a right of action against the payors or drawers, it can not depend upon the acceptance thereof. In Buckner v. Sayre, 18 B. Mon., 745, this court held, upon a number of authorities cited, that the doctrine was well settled that an order drawn by a debtor on a person having funds in his hands is, after the presentment to the drawee, an assignment of such funds, to the extent of the order, and the drawee can not legally part with such funds to

the drawer or any other person, and consequently must pay the same to the holder of the order. And in 2 Pars. Notes & B. p. 61,—an authority to which we are referred by counsel for appellee,—it is said: "While, therefore, we admit that a bank may be liable, in a proper action, to a holder of a check for a wanton or fraudulent refusal to pay a check, whereby the holder lost the funds, yet only in such cases could any action 'be maintained against the bank for the refusal.' Then, taking the allegations of the petition as true, which is done for the purposes of the demurrer, the refusal of the bankers, of whom appellee was one, to pay the check, was wanton, at least, because he had the funds, and made no objections to the check; and as the drawers, after demand, could not collect the funds, it would seem irresistibly to result that appellants must have the right to maintain the action, otherwise the drawees would not be responsible to any one for the funds in their hands. We therefore conclude that the petition set forth a good cause of action. Wherefore the judgment is reversed, and the cause is remanded, with directions to overrule the demurrer, and for further proceedings consistent herewith."

The case of Deatheridge v. Crumbaugh was decided by the superior court. It appears in this case that George W. Lewis was indebted to appellee, Mrs. Crumbaugh, in the sum of $1,000; and on the 25th of January, 1885, he executed and delivered to her a check for $550 on the First National Bank at Georgetown, which check she did not present to the bank for payment until February 4th. In the meantime, to wit, January 27th, the appellant caused attachments to be issued and served upon the bank, thereby attaching the sum in the hands of said bank due by the bank to George W. Lewis, deposited therein. The amount

to the credit of Lewis both on the 25th and 27th of January was $586.60. We now quote as follows from the opinion: "Upon these facts the court adjudged that Mrs. Crumbaugh's claim or equity to the funds in the bank, to the amount of her check, was superior to that of the attaching creditors, and the only question involved in this appeal is the correctness of this proposition as a matter of law." The court, after entering into an extended discussion, affirmed the judgment of the court below. To the same effect is the case of Rosenbaum v. Lytle, 8 Ky. Law Rep., 607. The case of Pease v. Landauer, 63 Wis., 20, 22 N. W., 847; 53 Am. Rep., 247, is cited by appellee. The court in that case entered into a very lengthy discussion as to the liability of drawers, payees, and drawees of checks. It is stated in that opinion that the question as to whether the drawer of a check may lawfully, as between himself and the bank, direct the bank to refuse payment of a check drawn upon his account, or in other words, stop the payment of his check before presentation, so that the bank, though willing, would have no authority of law to pay same on presentation, was not involved in the question for decision. It is also conceded in the opinion that the decided weight of authority is that no action at law can be maintained by the check holder against the bank for refusal to pay same on presentation, and that the drawer may, before presentation, stop payment on it, so that the bank would have no legal authority to pay the same. The facts involved in the case are thus stated by the court: "Briefly, we have this state of facts: The firm of E. D. Davis & Co. gives Joseph M. Pease a check upon their bank in Milwaukee for the sum of $574.23 in settlement of an indebtedness due from them to Pease. At the time the check was given, and when presented for payment, there

was sufficient standing to the credit of the firm in the bank
upon which it was drawn to pay the same.   The amount of
the check is charged against Pease in their account with
him and credited to the bank on their account with the
bank.   Before the check is presented for payment at the
bank, an action is commenced by one partner against the
other to dissolve the partnership and close up its busi-
ness.   In that action a receiver is appointed, and the bank
has notice of such appointment before the check is pre-
sented; and thereupon the bank declines to pay the check
until the right of the receiver and the check holder is de-
termined by the court, and it retains in its possession the
money due the firm, without objection by the firm or re-
ceiver, until such determination can be had.   No demand
for the money is made upon the bank by the firm or the
receiver, and, so far as appears from the evidence, the cred-
it to the bank for the amount of the check remains, as well
as the charge of the same amount to Pease, on the books
of the firm.   So far at least as Davis is concerned, he ap-
pears willing that the money should be paid to Pease or to
his assignee, if he have one, if the note Pease agreed to
surrender to him when the check was given be surrendered
and canceled.   This was done at the hearing of the order
to show cause, so that the only objection Davis had to the
payment of the money to Pease or his assigns was removed
at the hearing.   I do not understand that the commence-
ment of the action to dissolve the partnership, and the
appointment of a receiver in that action, was in itself a
revocation of the order upon the bank to pay the money
to the holder of the check, and that if the bank had paid the
check after a simple notice that a receiver had been ap-
pointed, without any direction on his part to the bank
not to pay the check, the bank would have paid it in its own

wrong, and have been liable for the amount so paid, either
to the receiver or the firm.    The receiver in such an action
takes possession of the property of the firm for the benefit
of the members of which it is composed, and not primarily
for the benefit of the creditors of the firm.   Notwithstand-
ing the absence of any direct evidence in the record upon
the question, we think it may be fairly inferred that upon
the hearing of the order to show cause the receiver made
claim to the whole credit due from the bank to the firm,
and resisted the payment of the check to the holder; but it
does not disclose that any such claim was made by the firm,
or either of the members thereof.   However that may be,
we shall treat the question as though the receiver had the
right, even as against the wishes of the members of the
firm, to demand the payment of the amount due from the
bank to him, and that such demand on his part must have
the same effect in law as though made by the firm or the
members threeof."   The court finally adjudged in favor of
the holder of the check.   In the concluding part of the
opinion it is said:   "We are aware that there are decisions
of courts of high authority which are in conflict with the
rule above stated; but I think, as is well stated by the
learned judge who decided the case of Savings Inst. v.
Adae (C. C.) 1 McCrary, 501, 8 Fed., 106, that 'there is cer-
tainly no good ground for holding that a check drawn upon
a fund in bank is not an equitable assignment as between
the drawer and payee, and, in a case where there is no
controversy as to the rights of the bank or drawee, it does
not lie in the mouth of the drawer or his assignee to say
that such an instrument is not an equitable assignment.' "

It will be seen from the foregoing that the decisions re-
lied on by appellee are not conclusive of the question in-
volved in the case at bar.

It is contended for appellant that the death of the drawer revoked the check, and that the title and claim to the $199 vested in the appellant, the administrator. It is further contended that appellant, by actual notice to the appellee, revoked the check, and that the appellee was under no obligation to pay the check, and in fact protested it, and that it could not afterwards pay the $199, and thereby defeat appellant's right to collect the same. Dana v. Bank. 13 Allen, 445, 90 Am. Dec. 216, is cited by appellant. The main portion of the opinion in this case reads as follows: "This is an action by assignees in insolvency against a bank to recover the amount on deposit to the credit of the insolvent when the proceedings in insolvency were instituted, namely, October 7, 1865. The defense is payment of the balance of $1,060.90, to the holder of a check for $4,375 drawn September 23d, and presented for payment and dishonored September 25th. The next day the holder demanded payment of the actual balance, offering to endorse it on the check, and to leave that for a voucher. This was then refused. But on October 28th the bank did pay the amount on hand to the check holder, taking indemnity from him. We do not refer to the trustee process served on the bank, nor to the circumstance that many other checks were drawn, presented, and dishonored at the same time with the note upon which payment was subsequently made. These facts can not aid the case of the bank, and might of themselves present serious difficulties in the way of establishing the defense relied upon, if it were not defeated upon other grounds. The question to be determined is whether there was an equitable assignment of the balance on deposit in favor of the holder of the check. If he was entitled in any form to enforce the appropriation of the deposit for his benefit, then the pay

ment by the bank, though subsequent to the proceedings in insolvency, was justifiable, and constitutes a defense to this action.    In Bullard v. Randall, 1 Gray, 605, 61 Am. Dec., 433, it was held that a check for a part of the drawer's funds in a bank constitutes no assignment until presented for payment and accepted by the bank.    'It was a draft on a bank at sight, for a fixed sum, payable out of a general deposit of the drawer, being a larger sum standing to his credit.    Such an order is held not to be an assignment.' If the present check had been for less, instead of more, than the amount on deposit, that case would be an authority precisely in point for equitable assignments are respected upon trustees' process as fully as in proceedings in equity.    In Gibson v. Cooke, 20 Pick. 15, 32. Am. Dec., 194, it was held that an order upon a trustee by the *cestui que trust* to pay a sum larger than the amount of income in his hands when the order was made and presented, and not corresponding precisely with the amount payable on any one or more days when the installments of income were to be paid, did not constitute any equitable assignment, against the consent of the trustee.    The result of this decision is to establish—what would seem to be clear on general principles—that the bank was under no obligation to pay a part of the check, when not possessed of funds sufficient to pay the whole.    In the present instance there was at first no consent, but a refusal, to pay on account of the check the balance to the credit of the drawer.    And this refusal continued until after the commencement of proceedings in insolvency, when the rights of the assignees had intervened, and it was out of the power of the bank and the check holder to make any arrangement to their prejudice.    The two authorities from our own Reports are, therefore, taken together, decisive against the theory

that there was any equitable assignment in favor of the check holder in the present case.    And it becomes unnecessary to decide whether a check drawn for the exact balance in a banker's hands is an equitable assignment thereof, with or without evidence that it was so intended by the parties.    It may be observed that bills of exchange and checks do not stand on the footing of orders drawn upon a particular fund, with a manifested intention to create a lien thereupon, and that the tendency and preponderance of authorities seem in favor of the rule that neither a bill of exchange nor a check on a bank can operate as an assignment or appointment of the fund in the drawee's hands, or create any manner of lien upon it; in short, that the drawee owes no duty to the holder of either of these mercantile instruments previous to presentment and acceptance. This rule is supported by considerations of commerical convenience, and may be regarded as a corollary from the one, well established, that a bank having funds is liable in damages to a depositor for refusing to pay his check.    It was said in Gibson v. Cooke that 'a draft by the creditor on his debtor in the form of a bill of exchange, to the amount of the debt or the whole fund in his hands, is a good and valid assignment of the debt or fund.    But the remark, in the connection in which it stands, perhaps only means a draft on a particular fund; and, so qualified, it is undeniably correct.    It is enough now to hold that a check drawn upon a bank for more than the amount of the drawer's funds on deposit creates no lien upon and gives the payee no right to the actual balance until the bank has agreed to pay it *pro tanto*."

 As before stated, it is the contention of appellant that the death of the drawer of the check, as matter of law, countermanded or revoked the authority of the drawee to

pay the check, unless it had been certified or accepted by the drawee.  Several authorities are cited in support of this contention.  It is said in 2 Edw. Bills & N., p. 546, sec. 739, that:  "A draft that has not been accepted, and a bank check, should not be paid after notice from the drawer countermanding the authority, nor after the death of the drawer, which is a revocation of the authority.  But, if the bank pay without knowledge of the drawer's death, it seems, the money can not be recovered back, and there is no reasonable ground for holding the payment invalid.  For the authority of an agent is presumed to continue until terminated by notice brought home to him, and the bank on which the check is drawn, having funds, is bound to pay the draft."  Byles, Bills & N., (7th Ed.) p. 20, in discussing the rights and liabilities of drawers and holders of checks, says: "The check is an absolute appropriation of a sum of money in the banker's hands to lie till called for; but by delay the holder takes the risk of the bank's failure, or revocation of their authority to pay by death of the drawer."  On page 22 the same author says:  "It has been said that the holder of an unpaid check, as assignee of the chose in action, has an equitable claim on the drawee, and in the event of his bankruptcy, may prove under the fiat.  But in America it has been held that a check is not an equitable transfer by the drawer of part of the debt due to him from the banker, and the decisions of the English courts are to the same effect,"—citing the following cases:  Bullard v. Randall, 1 Gray, 605, 61 Am. Dec., 433; Shand v. Du Buisson, L. R. 18 Eq., 283; Hopkinson v. Forster, L. R., 19 Eq., 74; Citizens' Bank of Louisiana v. First Nat. Bank of New Orleans, L. R., 6 H. L., 352.  It is further said:  "It seems that the death of the drawer of a check is a countermand of the banker's authority to pay it, but that, if the banker

do pay the check before notice of the death, the payment is good,"—citing Tate v. Hilbert, 2 Ves. Jr., 118.    It seems that the decision in Tate v. Hilbert sustains the text above quoted.    It is said in section 310, 1 Morse, Banks, that:    "If the drawer has revoked the order before the bank has made payment or bound itself to pay, it must not pay; nor if the drawer is insane, and the bank knows of it (if the bank pays in ignorance of the insanity, it will be a good payment), or if the drawer is dead, not being a corporation or a firm (it is to be hoped that this law of revocation by death as to checks will be changed by statute); and the payments made will be appropriated in their order, the first sum drawn being deemed a payment *pro tanto* of the first sum deposited, even though some of the items of the account were trust moneys."    As to revocation of a check, we find the law thus stated in 5 Ency. Am. & Eng. Law (2d Ed.) 1079:    "The drawer, as between the bank and himself, has the right to countermand the payment of a check before it is paid, and takes upon himself the consequences of his act.    But he has no right to recall the check after it has been paid to one who took it in good faith and for value, nor can his banker do so for him. And when the check has been certified the authority as well as the responsibility of the drawer ceases, and he can not countermand it.    The same effect is produced when the law intervenes and attaches or sequesters the funds The insolvency of the drawer, when brought to the notice of the drawee, acts as a revocation of the check.    There is no express adjudication on this point, but the text writers, with perhaps one or two exceptions, state that the death of the drawer countermands or revokes the authority of the drawee to pay the check, unless it has been certified.    It is generally accepted, however, that the bank

will be protected if it pays checks in ignorance of the death of the drawer."

It was held by the supreme court in Tramell v. Bank, 11 Ky. Law Rep., 900, that a check is simply a written order of a depositor to his bank to make a certain payment.   It is executory, and as such it is, of course, revocable at any time before the bank has paid, or committed itself to pay. It is further stated in the opinion that a check is an assignment of the funds of the drawer to the amount of the check, which assignment is complete upon the presentation of the check; and, if the bank improperly refuses payment, that the holder may sue the bank is a well settled law of this State.   But the check is no assignment to the bank until notice is given to it.   The drawer may, in the interim between the delivery to the payee and its presentation for payment, draw his deposit from the bank and place it to the credit of another person, or incumber it so as to defeat the check; and we can, therefore, see no good reason why, as between the immediate parties to the check (where innocent parties are not affected), the drawer may not revoke or countermand it.

We are referred to the decision of the Illinois supreme court which held that the drawer of a check can not revoke payment, and that the bank, if it had the funds, must pay it when presented.   But it seems to us, both upon principle and the decided weight of authority, that the risk is the other way.   Morse, in his work on Banks and Banking (section 397), referring to the Illinois case with disapproval, says:   "The current of authority is very strong to the effect that the drawer may countermand."   1 Morse, Banks, sec. 398, in discussing the question under consideration, says:   "The remark once fell from Judge Story, in the oft-cited Matter of Brown, that the drawer of a check

had no right to countermand payment at the bank.   It
was obvious from the context that the judge referred
rather to the moral right than to the legal right.   He
meant simply that a debtor who had given to his creditor
a check in payment of his debt had no right toward that
creditor, 'right' being considered as a matter of right to
the check.   The language of the judge, taken in isolation
from the circumstances of the case and from the remain-
der of the opinion, seems to admit a different meaning,
and is, therefore capable of the misinterpretation and mis-
use which have been sometime feebly attempted.   But, if
such a misunderstanding is possible, still the authorities
to the contrary effect are numerous, and leave no shadow of
doubt upon the point." In further support of the above
quotation, the learned writer cites with approval the case
of Gibson v. Minet, 2 Bing., 7.   Gibson executed the fol-
lowing writing: "Waterford, July, 1822.   I request you
to hold over £400 from my private account to the dis-
posal of J. Mintern & Co.   Wm. Gibson." This order was
addressed to Messrs. Minet & Stride.   This order was de-
livered to a partner in the house of Mintern & Co. on July
8th, and to Minet & Stride on July 13th.   The drawer had
funds to his credit to the amount called for.   Upon the
receipt of it, one of the bankers wrote upon the debit
side of Gibson's account: "N. B.   By Mr. Gibson's letter
of the 8th of July, 1822, £400 is to be held at the disposal of
Messrs. J. Mintern & Co."   Mintern & Co. were customers
with the same banker.   On March 19, 1823, Gibson noti-
fied the bankers that he countermanded the order.   The
bankers immediately notified Mintern & Co., and desired
instructions.   Mintern & Co. replied, requiring that the
amount be carried to their credit, and the bankers com-
plied, and notified Gibson.   The jury found that the order

to the bankers was executory, and had not been acted up-
on at the time of the countermand, and the court held
that the countermand was therefore in season, and good.
Another recent English case also well illustrates the oper-
ation of the doctrine of this section. A debtor gave a
check in payment of his indebtedness. Before presenta-
tion of the check, garnishee process was served on him
in the suit against the payee. The drawer at once counter-
manded his check, and directed that it should not be
paid. The court held that by this stopping payment on
the check the original debt from the drawer to the payee
was revived, and was held by the garnishee process. It
is further said in reference to the right of the drawer
to countermand the check as follows: "This right he pos-
sesses until the bank has paid it out, or promised or be-
come bound to pay it out, upon some order emanating
from him, and presented for payment or acceptance at
the bank counter, or until the operation of law intervenes
by reason of some process. It is a matter of no conse-
quence how many checks are, with the knowledge of the
bank, outstanding in the hands of his creditors at the
time of his counter direction or demand of payment of
the whole fund to himself. The bank is not, and has no
right to constitute itself, the agent of those parties. It
not only owes them no duty, but it has not even any legal
power to act in their behalf." It may be conceded that
the supreme court of Illinois has announced a different
doctrine from the foregoing; also that Daniel on Nego-
tiable Instruments seems to be in accord with the doctrine
announced by the Illinois supreme court; but it seems to
us that the great weight of authority is against the con-
clusions of the Illinois court and Mr. Daniel. It will be
seen from the opinion in the case of Lester v. Given, 8

Weiand's Admr. v. State Nat. Bank of Maysville.

Bush, 357, that the court incidentally recognizes the right of the drawer to revoke the check before its presentation for payment; and, besides, the question of revocation or death of the drawer is not discussed or considered in the opinion. Nor have we been referred to any case in which the precise facts existed as appear in the case at bar.

The case of Dana v. Bank, 13 Allen, 445, 90 Am. Dec., 216, conclusively settles the question adversely to the contention of appellee. It will be seen in the case at bar that before the check became payable, and before presentation, the drawer died, and that the check was for $360, and the only amount of money in the bank due to the drawer was $199. And it is averred in the petition that on the 21st of August, at the time the check was presented, the plaintiff notified the bank of the death of the drawer and forbade the payment of the check, and that the appellee bank protested the check, but afterwards paid the $199 thereon, and afterwards plaintiff drew the check upon the bank, which the bank refused to pay. The right of the bank to refuse to pay a check drawn for a larger sum than it has funds of the drawer seems to be admitted and sustained by all the authorities. The bank in this case exercised that privilege, but afterwards undertook to revoke its action and pay part of the check. We think it clear that the bank has no such authority. The great weight of authority seems to be that the drawer may at any time revoke the payment of a check before its presentation and demand for payment. The decided weight of authority is that the death of the drawer operates as a revocation of the check; but, if the check be paid by the bank before notice of the death of the drawee, it seems that the payment will be held valid. It may also be well to remember that the giving of a check does not pay or ex-

Weiand's Admr. v. State Nat. Bank of Maysville.

tinguish a debt due from the drawer to the payee until the check is actually paid, unless it is specially agreed by the parties that the check is accepted in satisfaction of the debt. The bank is, in a sense the agent of the depositor, and must at all times obey the order or direction of the depositor, unless other legal rights have intervened. It may be true that the drawer who gives a check and then countermands the payment may be guilty of a moral wrong towards the payee. It may sometimes happen that a revocation of a check by death will result in loss or inconvenience to the payee. But such things can not change, and ought not to change, the well-settled rule of law governing such transactions. Commercial business and the convenience of banks and depositors seem to require the enforcement and maintenance of the law as herein indicated.

It results from the foregoing that the court erred in sustaining the demurrer to the petition. Judgment reversed and cause remanded, with direction to overrule the demurrer, and for proceedings consistent herewith Whole court sitting.

Dissenting opinion by Chief Justice Paynter, in which Judges Burnam and Hobson concur.

In the disposition of this case the court should have followed the rule (and the deductions which necessarily followed it) enunciated in Lester & Co. v. Given, Jones & Co., 8 Bush, 357, and reaffirmed in Weinstock v. Bellwood, 12 Bush, 139. In these cases the court held that a check is an absolute appropriation of so much money in the hands of the banker to the holder, to remain there until called for, and can not after notice be withdrawn by the drawer. As between the drawer and the holder of the check the appropriation is absolute, but the law will not allow the bank to suffer, before notice, that the check has been withdrawn

by the misconduct and wrong of the drawer in beating the holder of the check to the bank. If there is an absolute appropriation of the money to the holder of the check, it logically follows that the drawer of it can not deprive the holder of his right to the fund by notifying the bank not to pay the check. Then the holder's right to the fund has attached it, is only by his consent that the drawer can again be reinvested with any right to the fund. This being true, when the drawer dies, it being necessary to have the consent of the holder of the check to reinvest the drawer with an interest in the fund, the drawer's death can not reinvest his estate with a right to the fund which in life he had voluntarily appropriated to another. The fact that there was not fund enough in the bank to pay the entire amount of the check did not deprive the holder of the right to have paid to him the amount actually in bank.

This court has heretofore followed the doctrine of Daniels on Neg. Instruments, and I am of the opinion that it is the correct one.

Judges Hobson and Burnam concurring.

---

CASE 31—ACTION TO RECOVER POSSESSION OF PROPERTY AND TO VACATE A JUDGMENT—DEC. 13.