Case 65.—ACTION BY C. W. BOSWELL & OTHERS AGAINST THE CITIZENS' SAVINGS BANK.

## Boswell, &c. v. Citizens Savings Bank.

123  485
s127  24

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for Defendant. Plaintiffs appeal. Reversed.

1.  Assignments—Checks—Appropriation of Bank Deposit—As between the holder of a check for value in due course and one asserting a junior lien on the drawer's bank deposit, the check oprated as a pro tanto appropriation of the deposit prior to

the change in the law by Negotiable Instruments Law (Acts 1904, p. 250) sec. 189.

2. Same—Negotiability of Checks—Checks are negotiable instruments both at common law and under the express provisions of Ky. St. 1903, sec. 478.

3. Garnishment—Debts Evidenced by Check—Debts evidenced by bank checks are not subject to garnishment if the check is actually discounted for value in due course by an innocent purchaser, although it may not be discounted until after service of the writ.

4. Same—Where a check was drawn merely to transfer the amount thereof to the drawer's account in a different bank, it did n( t operate as a pro tanto appropriation of the drawer's account in the drawee bank as against a garnishing creditor of the drawer prior to actual payment by the drawee bank, though the bank prior to the payment had notified the payee bank that the check would be paid on presentation.

5. Same—Debts Included in Garnishment—Civ. Code Prac. sec. 203, provides that, if property attached be stock in a corporation, the corporation may be summoned as garnishee, and section 222 declares that, in proceedings on such attachment, the garnishee may pay the debt owing to, or deliver the property held for, his debtor, to the sheriff, and to that extent be discharged from liability to the debtor, but section 224 declares that each garnishee summoned must appear, though he may have delivered the property or fund to the sheriff, and that, in case of a corporation, any shares of stock held therein by or for the benefit of the defendant "at or after the service of the order of attachment" shall be subject to the writ. Held, that the words "at or after" in section 224 related only to corporate stock, and that the writ did not cover other indebtedness which accrued after service.

6. Same—Correction of Record—Notice to Garnishee—Where a correction of the record with reference to the name of the defendant was not made until after the garnishee had appeared, answered, and been discharged, the garnishee was not bound to notice such correction unless a new order of attachment was served on it.

OPINION BY JUDGE O'REAR—Reversing.

Appellants sued the Odell Commission Company, alias dictus the Odell Company, incorporated, to recover money bet and lost by them to those companies in a gamble upon the stock market. The statutes of

this State allow a recovery in such an action by the loser. The plaintiffs sued out general attachments, causing the Citizens' 'Saving Bank of Paducah to be summoned as garnishee therein. The attachments were served on the bank about 7 o'clock a. m., June 11, 1903. The bank answered as garnishee on June 30, 1903, saying that it owed the defendant nothing. The principal defendant sued was styled, in the suit and in the garnishee process, the "Odell Commission Company." While that suit was pending, on October 29, 1903, the plaintiffs filed amended petitions, charging that the acts complained of were committed also by the "Odell Company," which was another name under which the same parties were conducting their bucket shop business. After judgment in behalf of the plaintiffs in that action against the Odell Company and others joined and sued in the action as principals in the play, the plaintiffs filed this suit against the Citizens' Savings Bank charging that it, in that former action, had not truly made disclosure of the money it owed to the principal defendants; that it then had on deposit when the attachment was served upon it, $6,000 to the credit of the Odell Company; that afterward, but on the same day, it received on deposit $8,800 additional—none of which did it report when it filed its answer in the attachment suit. The Code allows such an action against the garnishee who has failed to make true disclosure.

The answer of appellee as garnishee it claims was true, because of the following facts: Appellee, a bank of deposit, had an account with the Odell Company, which it had been advised was an incorporated concern under the laws of Ohio and doing business at Cincinnati, by which there was deposited with the bank, to the credit of the Odell Company, from time to time, by the representatives or customers of that company at Paducah, various cash items. The sum of these it remitted daily, or nearly every day, to the

Odell Company by this process.  It, according to
previous arrangement, wired the Merchants' National
Bank of Cincinnati, Ohio, also a depository of the
Odell Company, that it would pay the check of the
Odell Company for so much, the amount to the latter's
credit that day, whereupon  the  Cincinnati bank
would  advise  the  Odell  Company  by  telephone
of the receipt of the message from the Paducah
bank.  The Odell Company would then draw its check
for the amount reported in favor of the Merchants'
National Bank of Cincinnati, upon the Citizens' Sav-
ings Bank of Paducah and deliver it to the Merchants'
National Bank, who gave the Odell Company credit
for it as a cash item.  The Merchants' National Bank
then sent the check, with telegram attached, to the Cit-
izens' Savings Bank for payment, whereupon the lat-
ter would send the former New York Exchange to
cover the sum of the check. That was the ordinary
course of the transactions. The particular transaction
was that, on June 9, 1903, Odell's agents or custom-
ers, whichever they were, deposited with the Citizens'
Savings Bank to the credit of the Odell Company, the
sum of $3,000.  On the following day they deposited
$3,000 more.    The Citizens' Savings Bank then sent
the Merchants' National Bank of Cincinnati this tele-
gram:  "Will pay check of the Odell Company for six
thousand dollars.  Candoma.  (Signed) Citizens' Sav-
ings Bank."  The word "Candoma" is an arbitrary
cipher, which was adopted by the parties for purposes
of identification in telegrams.  The message reached
Cincinnati on the same day, June 10th.  The Odell
Company, being notified, drew its check for $6,000 on
the Citizens' Savings Bank in favor of the Merchants'
National Bank and delivered it to the latter, who cred-
ited the account of the Odell Company with $6,000.
The Odell Company then had on general deposit to
their credit in the Merchants' Savings Bank more
than $400,000.  The Merchants' National Bank placed

the check in the mail for collection.  But before it was presented the attachment was served in the suits of appellants above named.  Appellee treated the attachments as ineffectual and paid the check.  It regarded that its telegram was equivalent to, if not indeed actually, a certifying of the check for $6,000, which placed the fund against which it was drawn beyond attachment against the depositor.

Some point is made in the pleadings, and some show attempted in the evidence, that appellee was also misled by the name used in the attachment—that of the Odell Commission Company.  But the evidence leaves scant room for doubt that this idea is more of a makeshift.  The Odell Commission Company had done business as a depositor on the same terms with appellee.  It was immediately followed by the Odell Company, whose letters were signed by the same person as president, notifying the bank that the Odell Commission Company had quit business, and that the Odell Company would thereafter do the business as was done previously by the former company.  They knew the same person, W. J. Odell, was manager of the new concern as he was of the old.  The bank's officers were aware of the character of this business; they personally knew the local representatives conducting it, and must have known whence came the large deposits with which they were favored.  The case was tried out before a jury, who, under instructions hereafter to be noticed, found a verdict for the defendant bank.

The questions of law presented by this appeal are: (1) Whether a check drawn against a deposit in bank before an attachment or garnishment served upon the bank, takes precedence of the attachment, although the check may not be presented to the bank for payment till after the service of the attachment.  (2) Whether a certified check places the deposit beyond garnishment process, although it may not have gone into the hands of another holder for value in the usual

course of business. (3) Whether the service of the attachment holds funds deposited with the garnishee after the service, but before answer. (4) Whether the garnishee must look to the record of the attachment suit to see whose funds are attached, or whether it may look alone to the garnishment process and ignore the proceedings in court.

It will be observed that the first two propositions submitted arise under the law merchant, and the latter two under the practice in this State concerning attachment proceedings. Whether a check drawn by a depositor against his credit on deposit with his banker is pro tanto an appropriation of the sum owing him by the bank may be treated, under the facts in this case, as settled in this State in the affirmative (Taylor's Adm'r v. Taylor's Assignee, 78 Ky. 470; Winchester Bank v. Clark County Bank, 51 S. W. 315, 21 Ky. Law Rep. 311; Lester v. Given, 8 Bush, 361), although we note that such is not always held to be the common law, and such is not now, by statute enacted since this case was made up (section 189 of "An act relating to negotiable instruments," approved March 24, 1904 (Acts 1904, p. 250), the law in Kentucky. But the doctrine stated was applied always in this State to cases where there was a contest between a holder of such check for value in due course, and one asserting a junior lien upon the fund. Where that was not the case, the court has indicated that the rule did not apply. Weiand's Adm'r v. Bank, 112 Ky. 310, 23 Ky. L. R. 1517, 65 S. W. 617, 66 S. W. 26, 56 L. R. A. 178. So the two propositions are reduced to one, which is whether a check drawn against the deposit is an appropriation pro tanto as of its date when the check had not passed into the hands of a holder for value in due course. Checks are, by statute, as they were at common law, bills of exchange, and negotiable instruments. Section 478, Ky. St. 1903. Debts evidenced by such instruments are not subject to garnish-

ment if the negotiable bill or check is actually discounted for value in due course by an innocent purchaser (Kelley v. Smith, 1 Metc. 313; Payne v. Bank, 10 Bush, 176; Ritchie v. Cralle, 56 S. W. 963, 22 Ky. Law Rep. 160), although it may not be discounted until after service of the attachment.   The trial court so ruled the law.

But the inquiry here necessarily goes to the point of determining whether the check was sold or discounted, to another for value in due course.   We do not deem the fact material whether the check was certified. Manifestly the certification of the depositor's check did not alter the bank's relation as his debtor, further than that notice was thereby given that the drawer intended to assign the fund and the bank's assent to it so that any subsequent purchaser might take it with the bank's assurance that it would be paid when presented.   It might be said it was equivalent to an accepted bill of exchange where both drawer and acceptor had become bound to the holder.   But so long as the check remained in the hands of the depositor there was no enhancement of the bank's liability to him. It still owed him the same amount of money, which it would pay to him upon the presentation of that check.   Not until the check had passed into the possession of a purchaser for value in due course would the bank's liability to its depositor be changed or relieved. If, for example, the check had been stolen from the depositor and his endorsement forged upon it and then it had been sold to a stranger for value the bank would not have been released from its original liability to the depositor.   So long as the property in the check continued in the depositor he had the right to collect the money on it from the bank, and, for that reason, his creditors had the right to attach if for a liability of his.   The depositor could not by merely taking a certified check payable to himself, or his order, remove the fund from the effect of the at-

tachment process, yet leave the fund where it was. If the depositor made the check payable to his clerk, or agent, to enable the latter to draw the money on it so that the cash might be handed over to the depositor, that would not alter the relation of the bank and the depositor; for the fund would still belong to the depositor. When the depositor drew his check in favor of another bank, which was also his depository, and delivered it to the latter for credit on his account, so far the transaction was in nowise changed from its character as a debt owing by the first bank to the depositor, until the former had actually paid it. That the check had been certified in that transaction counted for nothing. The second bank, by crediting the check to the open account of its customer, the drawer of the check, it is true, took the title to the fund it represented. But there was this implied contract between them concerning it: If, for any reason other than the negligence of the latter bank, the check was not honored, the drawer would repay to the latter bank the amount so credited to him. In fact, in this case that was the express agreement between the parties with the addition that the latter bank would charge the item back to the depositor's account to offset the credit.

The real transaction here amounted to this: The Odell Company had $6,000 in appellee bank at Paducah. Desiring to have it brought to its depository in Cincinnati, it drew its check for $6,000 on the Paducah bank, payable to its Cincinnati banker, the latter thereby undertaking to collect it for its depositor and giving him credit in anticipation of its collection, but to be revoked if the collection miscarried. The Cincinnati bank parted with nothing. Its actual position was not changed. The fact that Odell Company might have checked against the credit in the Cincinnati bank, but did not, does not alter the case. It was not a sale of the check to the Cincinnati bank.

There was not a discounting of it.   When the Cincin-
nati bank got the money, or the New York exchange
which would have been the same when accepted, then
it would have assumed a new relation to the Odell
Company with reference to the deposit, for it would
then have become an unconditional, instead of a con-
ditional deposit, and the Cincinnati bank would have
been compelled to pay the checks of the depositor
against it, because it had actually received the deposi-
tor's money.   Until the money was received, or until
the money had been checked against and paid out, the
Cincinnati bank had parted with nothing.   Its condi-
tion was not different from what it would have been if
it had agreed to buy the check and pay $6,000 for it,
payable when the check was actually collected, credit
being given, though, on the books of the bank to show
the transaction, but before any payment was made the
check was not paid by the drawee for any reason.
The Cincinnati bank, though a purchaser, was not, in
the eye of the law, a purchaser for value in due course
That term implies an irrevocable contract of purchase
by which title passes, and an adequate consideration
then parted with, so that, unless the purchaser gets
what he has bought, he would sustain actual loss.
The question whether the Cincinnati bank was such a
purchaser for value on the undisputed facts, was one
of law.   The court erred in the instructions in submit-
ting it to be found by the jury.

The circuit court held that funds deposited with the
bank after the service of the attachment and before
the bank answered as garnishee were not covered by
the attachment, and hence need not be disclosed by
the garnishee.   The method of attaching by garnish-
ment is to serve a copy of the attachment upon the
person holding the property of, or owing a debt to,
as garnishee.   If the property attached be stock in
a corporation, the corporation may be summoned as
garnishee.   Section 203, Civ. Code Prac.   In proceed-
ing upon such attachment the garnishee may pay the
debt owing to, or deliver the property held for, his

debtor, to the sheriff, and to that extent be discharged
from liability to his debtor. Section 223, Civ. Code
Prac. But each garnishee summoned must appear
(section 224, Civ. Code Prac.) although he may have
delivered the property or fund to the sheriff. This
is to have him disclose to the court issuing the attach-
ment the nature and extent of his liability to the
debtor defendant. The appearance may be in person
or by affidavit, disclosing under oath the liability to
the debtor. The section concludes: "And in the case
of a corporation, any shares of stocks held therein
by or for the benefit of the defendant, at or after the
service of the order of attachment."

Appellants contend that the words "at or after"
refer not alone to the shares of stock in a corporation,
but to debts or other property in the hands of the
garnishee to which the defendant may be entitled.
The next section of the Code (225), which was enacted
upon the Code revision in 1877, in lieu of section 246
of the old Code, says as to the disclosure to be made
by the garnishee: "*  *  * And if it be discovered
on such examination that, at the service of the order
of attachment. upon him, he or the corporation was
possessed of any property of the defandant, or
was indebted to him, the court may order a delivery
of such property, and the payment, or the security for
the payment of such sum into court," etc. As only
the sum or property required to be disclosed by the
garnishee is directed to be paid into court, to the
officer executing the attachment, the process takes
hold of that alone. We see then that, as to all prop-
erty and debts held or owing by the garnishee, the
statute fixed the time of disclosure, and thereby the
measure of the lien created by the attachment at what
was held or owing when the writ was served upon
the garnishee. But as to stocks in corporations, it takes
hold of all then owned in it by the defendant, or there-
after up until the appearance and disclosure by the
garnishee. In the old Code this same provision existed

as to corporate shares. Section 245, Myers' Code. It is carried into the new Code without change. Section 224, Civ. Code Prac. But as to debts and other property the old Code (section 246, Myers' Code) required the disclosure of the garnishee, using the expression ''at or after the service of the order of attachment.'' Construing section 246, old Code, this court in Smith v. Gower, 3 Metc. 171, held the garnishee liable to answer for debt owing at or after the service up until he should have answered. In framing the present Code, the codifiers have omitted from section 225 the words ''or after,'' and we must conclude that they intended to effect the change in the practice that this change of language clearly implies. The trial court ruled correctly in excluding from the jury the consideration of the deposits made after the service of the attachment upon appellee bank as garnishee.

The remaining question is whether the garnishee is affected by what appears of record in the suit out of which the attachment issued. If the record had disclosed that the Odell Company was the defendant sued and the writ served on appellee as garnishee had shown that it was the property of the Odell Commission Company that was attached, this clerical error would have been perceived by an inspection of the record. But it sometimes happens that an attachment summoning garnishees is executed in a county far distant from the place where the action is pending. It seems to us if the mistake is one that is reasonably calculated to mislead, and does mislead, the garnishee, so that he fails to hold the fund or property in his possession belonging to the real defendant, he ought not to be held liable for a mistake not his own. Whether he was so misled, and whether the fact was reasonably calculated to mislead him, are matters of fact referable to the jury. There may be instances in which he should also be held to look to the record. But in this case the correction of the record was not made as to

the defendants' true name until after the garnishee had appeared and answered and been discharged. After his discharge he need not notice the record further, unless a new order of attachment is served upon him.

But for the errors indicated the judgment is reversed, and cause remanded for proceedings consistent herewith.