Judge Mills
delivered the opinion.
This is an action of trespass, for entering the close of the plaintiff, now defendant in error, and taking and carrying away a waggon and horsé. The defendant below, now plaintiff in error, pleaded not guilty, and, by consent, was to give any matter in evidence which might have been specially pleaded in bar. On the trial, it appeared that the defendant was constable of that county; and that on the l Sth May, Í811, a certain William Robins placed in the defendants hands, for collection, two notes executed by a certain David Vancleve to one Jack Prior, and assigned to Joseph Robins for the payment of money. No assignment appeared on either of the notes from Joseph to William Robins; and the constable, on the reception of these notes, executed to said William Robins a receipt for them, engaging to collect and account for them according to law. This receipt, on the 9th July, 1818, William Robins assigned to Porter and Young, merchants, expressing value received. The constable procured warrants on each note, and obtained judgments thereon against Vancleve; and on the emanation of executions, they were replevied by Van-cleve, with Field, the present defendant in error, as security in the replevin bonds. When executions of fieri facias issued on the bonds, the constable, not finding any estate of Vancleve, levied them on the waggon and horse in the declaration mentioned, the property of Field, and advertised and sold the said property at his house, never having removed it; and on the day of sale the officer behaved orderly and peaceably. Field, on the day of sale, furnished one of the bidders with live money to purchase the property; and that bidder bought the property for Field, and paid for it with Field’s money: And this is the same entry and taking relied on as the trespass for which the suit was brought. The facts which are relied on to make the officer a tres *105 passer, are (he following: Some short lime before the sale, a certain-Charles Eastin, a brother-in-law of Vancleve, as he deposed, when introduced as a witness for the plaintiff below, now defendant in error, purchased of Joseph Robins the judgments or demands, and received from him a writing addressed to the constable to the following effect:
“Mr. Francis Millar — Whereas, 1 have this day assigned to Charles Eastin, the two judgments in your bands obtained some time since against David Vancleve; this is therefore to authorise you, upon the receipt of all costs, to stop all further proceedings thereupon. Given under my hand and seal this 11th day of August, 1818.
“Signed, JOSEPH ROBINS, (Seal.)”
Eastin further deposed, that some time before the sale he offered to pay up all costs, and that the constable refused to receive the costs, but insisted to goon and collect the money, as he was indemnified, and had given his receipt to William Robins. That he, Eastit), when he received said assignment, executed his note to Joseph Robins for about eighty or ninety dollars, the amount of the debts, which note was not yet paid- off: That at the time of his purchase of the judgments, he had no knowledge or notice of the transfer of the receipt by William Robins to Porter and Aoung. It was further proved by others, that" on the day of sale, Field, the defendant in error, offered to pay up the costs to the constable, and forbade the sale. But the constable insisted that his receipt was out for the money, and that he would, and did, goon.
s Upon the subject of the transfer or assignment of the constable’s receipt to Porter and Young, the evidence is somewhat contradictory as to the nature of it. The assignment itself is absolute and unconditional. But the store-keeper of Porter and Young deposed, that William Robins took up goods to the amount of the receipt and made the assignment; but that it was agreed, that if Joseph Robins called on Porter and Young for the receipt, before the money was collected, it was to be given up to him; and that Porter and Young was to go on and collect the money if Joseph Robins did not call. Another witness present deposed, that the bargain was, if the contract bet ween Joseph and William Robins was not confirmed, the receipt was to be returned. Ollier witnesses present at the same transaction, deposed that they heard no condition in the contract; but understood it, that the transfer was absolute, *106 aíl(] thst the receipt was given in payment for the goods.-⅜
The interest of a ness, to ex-timonv"must fae direct ia the issue of tile suit.
The or|l.V evidence touching the contract between William and Joseph Robins was this — one witness deposed* that Joseph Robins had offered to sell him the notes, and he had refused to take them, not believing Vancleve, the maker. to be good, and he conceived that the recourse to the assignor was then lost: That afterwards hearing they were transferred to William Robins, he met with Joseph Robins a short time previous to the assignment to Eastin, and asked him how be came to let William Robins cheat him out of the notes. To which Joseph Robins riplied, that William Robins was good for the amount; that he had property at a place mentioned, and he could make his money out of him This being ali the evidence in the cause, the jury found a verdict for the plaintiff of one hundred and twenty dollars. The counsel for defendant moved the court for a new trial, on th'e grounds that the verdict was against law and evidence; and also on the grounds of surprise, and the discovery of new evidence obviating that surprise, set forth in affidavits, which will be hereafter noticed. The court overruled the motion, and the defendant in that court excepted, and spread the evidence upon record, and now prosecutes this writ of error to reverse the judgment.
Before considering the question of a new trial, we will first dispose of a previous question made as to the competency of Enstin as a witness. The admission of him was objected to on the score of interest, as developed in the foregoing facts; but the objection was overruled, and the opinion excepted to. We do not conceive that his interest in the present matter of controversy was made to appear sufficiently to exclude him. For lie claims to be, and stands 83 an assignee of the judgments on which the executions issued, acting under which, the officer is accused of having committed the trespass. Ilis assignment either entitled him to the money, or it did not. If it did, his right to it, tl>e hands of the officer, could net be weakened by the in this action; or he was entitled to the replevin |}0t)(]s, as if they were never extinguished. If so, no find-*n§ *he jury between the officer and the present defendant in error could affect that right. If he was not entitled ⅛ the demand, and it belonged to Porter and Young, no verdict in this action could give him the right to it. It is /well settled, that it must be a certain interest, in the event of the suit, which will exclude a witness. Less than this *107 goes to his credit, of which the jury is to judge. We do] not perceive any certain interest, vvhich could result to the' witness, on the event of this suit, made out in evidence, We therefore conceive he was properly admitted.
Ajudg-mens; ⅛⅛ It law ""
™ mm amts of the holder of ’?11 equit?b‘e judgment" & thecourtwiti protect ⅜⅛
On the question of the verdict being against law and evidence, it cannot result favorably to tbe defendant in error. The question of title to these judgments or executions aa between Porter and Young, on one side, and Charles Eas-tin on the other, appears to be involved in tbe controversy. It is attempted to be proved by the plaintiff in error, that Joseph Robin* had previously transferred the notes to William Robins, and he to Porter and Young. To do this, he introduces the circumstance of the possession of the notes in William, and the acknowledgements of Joseph. On the other hand it is contended, that they belonged to Eastin by subsequent purchase of the judgments. Let them belong to whichsoever they may, it is certain neither can have more than an equitable right. For no assignment to vest the legal estate was made to William Robins; but tbe notes passed by delivery only, and he assigned the receipt of tbe officer to Porter and Young. Joseph Robins assigned the judgments to Eastin, and judgments are not made assignable by law, so that, at best, he held but an equity, The question then results, could an equity in the demand be noticed by the officer? and will a court of law so notice it, as to protect him while acting under the authority of the holder of that equity? We conceive both these questions must be answered in the affirmative. This court has already gone far in supporting the doctrine, that the equitable holder of a demand or judgment will be noticed in a court of law, so far as to protect him against any direct attempts of the legal title holder, to prejudice his interest.
If this principle is sound, it evidently follows from it, that officers ought to be protected in effectuating the of tbe holders of such equitable claims, if they can shew those claims well founded. William Robins, in Ibis instance, was evidently trusted with the custody of these notes of Joseph; for it cannot be presumed that he came by them improperly. To him tbe officer created the obligation to collect and account. Put the case, then, in the strongest, attitude for the defendant in error, and say, as one witness has proved, that the receipt was transferred to Porter and Young, to be returned in case the contract (supposed to be the contract for the note) was confirmed be *108 tween Joseph and William Robins; it is proved that a short period before the assignment to Eastin, Joseph Robins adhered to the contract, and by his declarations, held William responsible, not for the notes themselves, but the amout, for which he alledged William was good, and which he conceived he could get out of the property held by him at, some distant point, if the defendant in error can, in any manner, succeed, it must be by setting up the authority of Joseph Robins to Eastin; and thus claiming a right under Joseph Robins, he must be bound by his previous acknowl-edgements, of his claim for the notes against William Robins. Suppose the bargain to be, that Porter and Young was to collect the money, if Joseph Robins did not previously call upon Porter and Young for the receipt; no evidence was adduced to shew that he ever called upon Porter and Young for the receipt; but his declarations above allu-ed to are adduced distinctly announcing his claim against William Robins for the payment of the notes, which he had let him have. Take the evidence, then, as strong for the defendant in error as it can be made, we conceive the officer mac¡e out a valid equity in Porter and Young, derived me-diately fro.m Joseph Robins, which might have justified in proceeding, notwithstanding the equity of Eastin, which is of later date. For even if the equity of Eastin e equa|) yCt it is a rule iri equities, that when both are equal, that shall prevail which is prior in date. On this ground, therefore, we do not conceive the verdict can be
Where the tweaf two or more ees is equal, that shall is prior in date.
But there is a still further ground against this verdict,. which is a defect of proof in an essential point. It may be a question of some moment, in case the plaintiff and defendant in an execution make an arrangement, by which the debt is to be otherwise discharged, or the proceedings to be staid, and the plaintiff gives the defendant an order to the officer to stay further proceedings after he bad levied, and the officer was still to proceed, how far the officer having commenced under proper authority, would be a trespass-cr by relation or ab initio, at the suit of tbe defendant. This it is not necessary for us now to decide. For, put tbe case, that the officer would, under such circumstances, be liable to tbe defendant in an action of trespass, it would be certainly necessary, in snob case, for the defendant in tbe execution, if he had not paid tbe debt, to shew that he derived his authority from the plaintiff to the officer, and that *109 the ordeTs were given from the plaintiff fur his benefit; otherwise it would be a question more properly between the plaintiff and the officer, and the defendant who owed and' was bound to paj the debt, could not complain of being injured by being compelled to do So. Admit, then, the equity of Eastin in the present instance was superior to that of Porter and Young, it was certainly necessary for the plaintiff below, now the defendant in error, to shew that the purchase by Eastin was for his benefit, and that the order of Joseph Robins was to protect him from the sale. This he has wholly failed to do. If Eastia in this case, after receiving (his order, had directed the officer to proceed, if bis title was good, the execution was for his benefit, and he had a right to do so, and the defendant in error would be bound to no more than, what he was before, that is, to pay, his debt for the benefit of Eastin No authority, then, is shew n from either Joseph Robins or Eastin to the defendant in error to stop the proceedings of the officer, and the want of this leaves out an essential link in the chain of facts necessary to support the action in law.
Anewtri at should setdom begran-'of^v* ¡dence *that " goes to supP®1? Pomts presented"^ the jury on th.e former tmlt
The only remaining grounds tora new trial is that made out by the affidavits. The defendant below, now plaintiff in error, deposed that although he knew no witnesses by whom he could prove it, yet it was confidently believed that Eastin had knowledge of the claim of Porter and Young to the notes before bis purchase, and that he would not deny it; and that he, the then defendant, was surprised at the trial by his swearing that he had no knowledge of their claim. That since the trial he had discovered two witnesses, of whom before he had no knowledge, who would prove that both Eastin and Joseph Robins had knowledge of the transfer from William Robins to Porter and Young, and that Eastin had given his note for only about thirty or fifty dollars for the debt. He produces the affidavits of these witnesses, and they fully support his statement.
It is a correct rule, that new trials on account of the discovery of new testimony, consisting of the swearing of witnesses, ought seldom to be granted, especially when the newly discovered evidence goes to points on which the party adduced evidence, and had prepared himself. The presumption then is violent, that be might have previously discovered the witnesses on using reasonable diligence. Besides, to admit the discovery of new witnesses, after a par *110 ty is under the pressure of a verdict, presents a strong temptation to the procurement of witnesses by improper means. But cases may be found presenting good exceptions to this rule; and vve conceive the surprise occasioned by the swearing of a witness on a trial to facts, which the party, against whom he was called, would not suppose or believe he would swear, as in this instance, may furnish oneot these exceptions, in a case like the present, where the iffidavils of the newly discovered witnesses are produced, and shew, beyond the possibility of doubt, that the statements of the witness Easiin can be contradicted, and that his claim probably originated in collusion between him-seii and Joseph Robins to defeat the claim of Porter and Young. Add to this, that the officer could not have been placed on his guard on this point, or the presumption is strong that he would have adduced evidence upon it; and that he acted as an officer, and could have bad no other motive to proceed as he did under the executions, but a punctual discharge of his duty For his fees could not have tempted him, as they were offered to him bqth by Eastin and the defendant ia error.
■JJardin for plaintiff, Talbot for defendant in error.
We therefore conceive that the court erred in refusing to grant a new trial, and that the judgment must be reversed with costs, and the verdict set aside, with directions to the court below to reinstate the cause, and proceed therein not inconsistent with this opinion.