CASE 33—ACTION BY THE COLUMBIA FINANCE & TRUST COMPANY AGAINST THE FIRST NATIONAL BANK.—OCT. 7.

# Columbia Finance & Trust Co. v. First National Bank.

APPEAL FROM JEFFERSON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

ASSIGNMENTS—ASSIGNMENT OF CHOSE IN ACTION—PARTIAL ASSIGNMENT—NOTICE TO CREDITOR—PRIORITY—EVIDENCE—DEPOSIT OF JOINT FUND—PARTNERSHIP—TRUST FUNDS.

Held: 1. Where several persons make a deposit in a bank to their joint credit, the bank must have the signatures of all of them appended to a check before it is authorized to pay it.

2. Where moneys belonging to a firm are deposited in a bank, a member thereof can not employ any part of such funds to pay his debt to the bank without the consent of the remainder of the firm.

3. If a depositor of trust funds appropriates them to the payment of his individual debt to the bank, the latter, having notice of the character of the fund, is affected with knowledge of the misappropriation, and may be compelled to refund.

4. An assignment by a member of a firm, in payment of his personal debt, of a portion of a sum owing the firm, which is consented to by the other partner, is of as much validity as if the assignment had been made in the name of the firm.

5. As between successive assignees of the same chose in action, the order of time, rather than the order in which notice is given to the debtor, controls the preference.

Columbia Finance & Trust Co. v. First Nat. Bank.

6. Civil Code, section 19, provides that in the case of an assignment of a thing in action, the action by the assignee is without prejudice of any discount, set-off, or defense now allowed, and Kentucky Statutes, 1899, section 474, provides that on the assignment of a bond or bill for money the assignee's action is without prejudice to any defense the debtor had before notice. HELD, that an assignee's right of action on the assignment of a chose in action is without prejudice to any discount, &c., the debtor has before notice of the assignment.

7. Where a member of a firm assigned his interest in a sum owing the firm, which assignment was consented to by the other member of the firm, though the assignment was partial, it being afterwards assented to by the debtor, and the debtor not complaining, the assignment would be protected in equity as against a subsequent assignee of the same interest.

8. The failure of an assignee of a chose in action to give notice to the debtor, having prejudiced no right, is immaterial in a suit wherein he seeks to enforce his assignment.

9. The fact that a bank, when a check was drawn on it, claimed not to have the money on hand, did not prevent the application of the rule that the holder of an unaccepted check may maintain an action thereon.

10. One of a firm of attorneys borrowed money of a bank, assigning as security therefor his share of a fee owing the firm by A. Subsequently he assigned his share of such fee to a trust company, and the other partner assigned to the trust company, to secure a loan, his share of the same fee and his share in another fee owing the firm by B. Thereafter a sum of money, from which it was understood the fee owing by A. was to be paid, came into the hands of the bank. HELD, that the bank not being a creditor of the latter partner, the trust company could not be compelled to first exhaust the fund arising from the fee owing by B.

FIRTLE, TRABUE & COX, HENRY L. STONE AND ALBERT S. BRANDEIS, ATTORNEYS FOR APPELLANT.

We submit that the rule in this case, which is decisive of the whole controversy, is a very simple one. To adopt an analogy from mathematics, we may put it in this form:

Where one quantity, A, is greater than another quantity, B, which in turn is greater than a third quantity, C, the first quantity, A, must be greater than the smallest quantity, C. The claim of appellant, by reason of the assignments to it of the entire fund by the united action of all the partners was greater, better, and superior to the claim of members of the firm and

Columbia Finance & Trust Co. v. First Nat. Bank.

of the firm creditors. The claim of firm creditors to the fund was admittedly greater than the claim of the assignee or transferee of a single member of the firm; that is, the firm creditors had a better right to the fund than did the bank, by reason of its assignments from Sudduth alone. If, then, the claim of appellant is better, superior, and greater than the claim of firm creditors, and the claim of firm creditors is better, greater, and superior to the claim of the bank, it follows by the rigor of a demonstration that the claim of appellant must be greater, superior, and better than that of the bank. All other matters simply becloud this one question, but they can not remove it nor take from it the fact that in it is the real solution of the controversy here presented. There is no way in which the claim of the bank can rise higher than its source, and Sudduth had no power to vest his assignee with a right or property equal in strength or in security to that with which all the partners joining by their united action invested the appellant.

For the reasons urged and upon the authorities cited, we respectfully submit that the judgment appealed from should be reversed with direction to the court below to enter judgment for appellant against the appellee for the amount of the checks sued on, with interest thereon from the dates the same were presented and payment thereof demanded.

### AUTHORITIES CITED.

1. Appellant's right to maintain this action as the holder of the checks sued on. Lester & Co. v. Given, Jones & Co., 8 Bush, 357; Chambers v. Northern Bank of Ky., 5 R., 123; Herndon v. Louisville Banking Co., 10 R., 585; Merchants' National Bank v. Robinson, 97 Ky., 552; Kentucky Flour Co.'s Assignee v. Merchants 'National Bank, 90 Ky., 225; Weiands' Admr. v. State National Bank, 23 R., 1517; 5 Am. & Eng. Ency. of Law 2d ed., p. 1061; Weinstock v. Bellwood, 12 Bush, 139.

2. The insufficiency of the defenses interposed by appellee. Pomeroy's Equity Jurisprudence, vol. 1, sec. 414; sec. 1277, note 1; secs. 683, 684, 685; Rice v. Rice, 2 Drew, 73; Mandeville v. Welsh, 5 Wheat., 277; Weinstock v. Bellwood, 12 Bush, 139; Bullitt's Civil Code, note to sec. 18; Hayward v. Andrews, 106 U. S., 672; New York Guaranty & Ind. Co. v. Memphis Water Co., 107 U. S., 214; Smith v. Bourbon County, 127 U. S., 111; Glenn v. Marbury, 145 U. S., 508; Bay v. Coddington, 5 Johns Ch. Rep., 54; Swift v. Tyson, 16 Peters, 1; Lee's Admr. v. Snead, Collard & Hughes, 1 Met., 628; May v. Quimby & Co., 3 Bush, 96; Greenwell v. Haydon, 78 Ky., 332; People's Savings Bank v. Bates, 120 U. S., 556; Fourth National Bank

Columbia Finance & Trust Co. v. First Nat. Bank.

v. New Orleans & Carrollton Railroad Co., 11 Wallace, 624; Couchman v. Maupin, 78 Ky., 33; Jones v. Lusk, 2 Met., 301; King v. Shaw, 9 R., 577; Jackson v. Holloway, 14 B. Mon., 108-112; Kincaid v. National Wall Paper Co. (Kan)., 54 L. R. A., 412; Annotation in 29 L. R. A., 681, 692, to assigned estate of Edwards & Wigginton, 122 Mo., 426.

3. The appellee bank had no right to set off the individual debt of Sudduth due to it against any part of the deposit to the credit of H. L. Stone, W. A. Sudduth and Bennett H. Young, president. 3 Am. & Eng. Ency. of Law, 2d ed., 835; Farmers' Bank v. Farwell, 58 Fed. Rep., 634; Coote v. Bank, 3 Cranch (C. C.), 95; Morse on Banks and Banking, 2d ed., 48; Zane on Banks and Banking, par. 140; Hodgin v. People's National Bank, 124 N. C., 543 (1899); Watts v. Christie, 11 Beav., 555; Reynes v. Dumont, 130 U. S., 354; Masonic Savings Bank v. Bang's Admr., 84 Ky., 135; Raymond, &c., v. Palmer, &c., 41 La. Ann., 432; Lindley on Partnership, p. 292, ed. 1888; Williams v. Brimhall, 13 Gray, 452; Cotzhausen v. Judd, 43 Wis., 213; McNair v. Platt, 45 Ill., 211; Brewster v. Mott, 3 Scam., 378; Hilliard v. Walker, 11 Ill., 644; Thomas v. Stetson, 62 Ia., 537; Witherington v. Huntsman, 44 S. W., 74; 64 Ark., 551; Smith v. Brannon, 51 S. W., 128; 21 R., 267; West v. Armstrong, 4 R., 998; Cochran & Fulton v. Anderson Co., National Bank, 6 R., 168; Flanagan v. Shuck, 82 Ky., 617; Eubank v. Vance, 6 R., 303; Pennell v. Deffell, 4 DeGex, M. & G., 372, 383; Firth v. Cartland; 2 Hem. & M., 420; Van Alen v. American National Bank, 52 N. Y., 1; Skilman v. Miller, 7 Bush, 428.

4. Sudduth had no power or authority as a member and in the name of the law firm of Stone & Sudduth to discount or endorse the Story note to the appellee bank, or to waive protest or notice of protest thereon so as to bind the firm or Stone, the other member of said firm. Breckinridge v. Shreve, 4 Dana, 375; Judge v. Braswell, 13 Bush, 67; 3 Am. & Eng. Ency. of Law, 2d ed., 473; Alsop v. Central Trust Company, 100 Ky., 375; Hedly v. Bainbridge, 3 Ad. & El., 315; Garland v. Jacomb, L. Rep., 8 Exch., 216; Dickinson v. Valpy, 10 Barn. & Cress., 128; Levy v. Pyne, 1 Car. & Marsh, 453; Smith v. Sloane, 37 Wis., 285; Chalmer's Digest of the Laws of Bills of Exchange, Promissory Notes and Checks, pp. 68, 69; Randall v. Lee, 68 Mo. App., 565; Moynahan v. Prentiss, 51 Pac., 94; Friend v. Duryee, 17 Flor., 116; Cowles v. McVicker, 3 Wis., 637-643; Nicholson v. Bank of New Orleans, 92 Ky., 255.

5. Appellee violated the agreement upon which the deposit was made when it appropriated the sum of $6,725.86 out of said deposit upon Sudduth's individual debt to appellee. Sec. 123

of Zane on Banks and Banking; Morse on Banks and Banking, p. 42.

6. As to the accounting. Lindley on Partnership, star page 340; Bates on Partnership, sec. 185, p. 188; Mutual Benefit Life Insurance Co. v. First National Bank, 24 R., 580.

MATT. O'DOHERTY, FOR APPELLEE.

1. Sudduth's authority and direction to appellee to apply the fees in its hands to the satisfaction of his and Stone's obligations to the appellee, and the application thereof made by the appellee pursuant thereto, and without any notice of appellant's claim amounted to a payment of the money by Sudduth to appellee.

The controversy here is not therefore between two holders of conflicting assignments, but between the holder of a mere assignment and one to whom the money has been paid.

2. If the assignments to appellant were binding on the construction company, as contended for by appellant's counsel, then appellant has a claim against that company but not against appellee. The appellant had no lien upon the fund. Money has no ear marks.

3. Sudduth had undoubted right to direct the application of his one-half of the fees in appellee's hands to the payment of his obligations to appellee. The appellee, with or without Sudduth's direction, had the right to apply the moneys of Stone and Sudduth, or of either of them, in its hands to the payment of the Story discount.

4. The appellant can not question Sudduth's right to discount the Story note. Sudduth's partner only, Stone, could raise the question at all. Stone is not a party to the action, and if he were, and the question was presented by him, it would be decided in appellee's favor. Stone could not even raise the question unless and until upon a final settlement of the partnership of Stone and Sudduth it should appear that Sudduth is indebted to him, and then only to the amount of said indebtedness.

5. The appellant has failed to show by averment or proof that Sudduth's note of $3,000, or Stone's note of $4,000 is unpaid, while the exhibits filed by appellant show affirmatively that Sudduth's note is paid.

6. The appellant did not receive the checks sued on in the usual course of business. It is not a bona fide holder thereof for value or without notice. Treating them as attempted assignments of the moneys in appellee's hands, they were received by appellant with full notice of the prior assignment of the moneys to appellee and of their appropriation and payment to appellee.

Columbia Finance & Trust Co. v. First Nat. Bank.

The checks on their face called for-"Sudduth's one-half of the fee" and "Stone's one-half of the fee) of 'Stone & Sudduth," and appellant knew when it received the checks that the fees in question had been paid to appellee and that the checks would not be paid. The facts do not bring the case within the rule established by Lester & Co. v. Given, Jones & Co., 8 Bush, 361, which enables the *bona fide* holder of a check received in the ordinary course of business to sue the bank in case of a wanton or fraudulent refusal to pay a check so received.

The refusal of the bank to honor the checks sued on in this case was neither wanton nor fraudulent, but was precisely what appellant knew would occur when it received and presented the checks to appellee.

We earnestly and confidently ask an affirmance of the judgment.

### AUTHORITIES CITED.

Spencer's Equity Maxim; Buckner v. Sayre, 18 B. M., 756; Winlock v. Bellwood, 12 Bush, 139; Mandeville v. Welsh, 5 Wheaton, 283 (opinion U. S. S. Ct.); Beach on Mod. Equity Jur., sec. 233; Newly et al. v. Hull, 2 Met., 532; Purcefull v. Pineville Bank, 17 R., 38; Herndon v. Lou. Banking Co., 10 R., 584; Bank v. Bongs, 8·R., 18; Jackson v. Holloway, 14 B. M., 136; Bank of Rep. v. Millard, 10 Wall (U. S.), 152; First Nat. Bk. v. Whitman, 94 U. S., 343; Seventh Nat. Bk. v. Cook, 73 Penn. St., 483; Etna Nat. Bk. v. Fourth Nat. Bk., 46 N. Y., 82; Carr v. Security Bk., 107 Mass., 45; Criveling v. Bloomsberg Nat. Bk., 46 N. J. L., 255; Commercial Bk. v. Miller, 77 Ala., 168; 2 Parson on Bills and Notes, p. 81; Breckinridge v. Shreve, 4 Dana, 371; Judge et al. v. Braswell, 13 Bush, 70; Breckinridge v. Shreve, 4 Dana, 377; Ky. Stats., sec. 483; Moody v. Wiley, 3 R., 315; LaCompt v. Litcher, 11 Ky. R., 362; Roberts v. Armstrong's Admr., 1 Bush, 263; Ky. Stats., sec. 374; Civil Code, sec. 19; Am. & Eng. Ency., vol. 13, pp. 575-7; Boetcher v. Colorado Nat. Bk., 15 Col., 16; Spain v. Brent, 1 Wall (U. S.), 604; Schupp & Schmidt v. Thomasson's Exr., 9 R., 360; Bank of Ky. v. Vance, 4 Litt., 175; Swigert v. Bank of Ky., 17 B. M., 285; Glass v. Pullen, 6 Bush, 349; Carlisle v. Jumper, &c., 81 Ky., 285; Garrott v. Jaffrey & Co., 10 Bush, 417; Voorhis, &c., v. Eiting, 15 R., 162.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Henry L. Stone and Watson A. Sudduth, two members of the Louisville bar, formed a partnership in the year 1889 for the practice of their profession under the firm name

of Stone & Sudduth. The partnership continued for about ten years. The firm was employed by the Richmond & Irvine Construction Company in the case of the Central Trust Company against the Richmond, Nicholasville, Irvine & Beattyville Railroad Company, in the United States Circuit Court for the District of Kentucky. While the suit was undetermined, on November 1, 1895, Sudduth borrowed of appellant, the Columbia Finance & Trust Company, $3,000, for which he executed to it his note, and to secure the note assigned to it in writing enough of his portion of his fee in that case to pay the note. Stone consented in writing to the assignment of one-half the fee to the trust company. On August 3, 1898, Sudduth, to secure his individual pre-existing debt and additional advances, assigned to appellee, the First National Bank, $2,500 of the amount due him out of the firm fees in the case referred to, and on February 20, 1899, he, to secure his individual pre-existing debt and other advances assigned to it the further sum of $5,000 of the amount due him out of the firm fees in that case. These assignments were made without the knowledge or consent of Stone, but on April 8, 1899, notice thereof was given by the bank to the construction company. On April 18, 1899, Stone borrowed of the trust company $4,000, executing his note therefor, and to secure it an assignment of his one-half interest in the fees of Stone & Sudduth above referred to; also his half of their fees in behalf of L. F. Mann in that action; and to this arrangement Sudduth, in writing, consented. Notice was given by the trust company to the construction company on May 8, 1899, of the assignments to it by Sudduth and Stone of the fees referred to. The firm of Stone & Sudduth was dissolved on August 14, 1899. After this, on September 20, 1899, there was paid to the Richmond & Irvine Construc-

tion Company and its attorneys, Stone & Sudduth, the sum
of $32,431.69, which sum included the fees of the attorneys
in the action mentioned, and, there being a disagreement
between the attorneys and their client as to the amount
of their fees, the money was deposited in the First Na-
tional Bank to the credit of B. H. Young, president, W. A.
Sudduth, and H. L. Stone, with the understanding that the
fees were embraced in the deposit, and that no part of the
money was to be paid out except on checks signed by the
three—Young, Stone, and Sudduth—Young being the presi-
dent of the construction company.   After this, on October
9, 1899, Sudduth authorized the bank to appropriate $7,500
of the amount to the satisfaction of the assignments he
had made to the bank.   Stone knew nothing of it, and
Young, who was informed of it by the cashier, said that he
had no right to do this; that the money was placed there
subject to the order of Stone, Sudduth, and himself.   The
cashier said that he had made a memorandum check, and
had appropriated the money under the assignment with
the agreement of Sudduth.   Young' replied that he could
do what he pleased with Sudduth's money, but that he could
not take the company's money, and it was then agreed be-
tween Young and the cashier that, if the fees of the attor-
neys were fixed at less than $7,500, the bank would refund
to the construction company the amount so overdrawn.
While matters thus stood, Sudduth died in November, 1899,
and in December the attorneys' fees were fixed at $6,725.86,
and thereupon the bank returned to the credit of the fund
$774.14, this being the amount of 'excess appropriated by
it over and above the fees.   The trust company did not
know at that time anything of these proceedings between
the bank and Sudduth, nor did Stone.   On January 3, 1900,
a check was delivered to the trust company on the bank

for $3,362.93, being Stone's one-half of the fees; also a check for $3,236, to be paid out of Sudduth's portion of the fees. These checks were signed by Young as president, H. L. Stone, and the executor of Sudduth. They were presented to the bank, and, payment being refused, this action was brought to recover on them. After a voluminous preparation of the case, the circuit court entered judgment in favor of the bank, and the trust company appeals.

The grounds of the judgment, as stated by the learned circuit judge, seems to be as follows: (1) The bank has possession and ownership of the money in controversy, having appropriated it by the direction of Sudduth, and with the consent of the construction company; and will not, therefore, be required to give way to the previous assignments made to the trust company, which were not assignments of the entire fund, but only of so much of it as was necessary to pay the notes. (2) It was known that the bank would not pay the checks when they were drawn, and no action can be maintained upon them by the trust company.

It was held in Weinstock v. Bellwood, 75 Ky., 139, that an entire claim can not be severed without the consent of the debtor, and that an action can not be maintained at law by the assignee of a part of a debt against the debtor, unless the assignment had been consented to by him. The general rule on this subject is thus stated in 4 Cyc., p. 27: "Partial assignments of such choses in action as are assignable can be made so as to entitle the assignee to the rights of a co-owner against the assignor. In England, and under some of the decisions of the American courts, an order given by a creditor to his debtor to pay a third party,

so much money out of a specific fund or debt is a valid as-
signment of so much of the fund or debt.   But the weight
of authority in the United States seems to be that such as-
signments, unless made with the consent of the party lia-
ble on account of the chose, are not binding upon him, and
he may discharge the liability by settlement with the as-
signor, the same as if no assignment had been made. Courts.
of equity, however, have always recognized partial assign-
ments of choses in action for many purposes, and will pro-
tect the assignees of such choses whenever they can do so
without working a hardship upon the debtor." To same
effect, see 2 Am. & Eng. Ency. of Law, 1069, 1070; 3 Pome-
roy's Equity, section 1280.   All the assignments in contro-
versy were partial.   After the payment of Sudduth's note
to the trust company, there would be left a balance of $136.-
93 of his part of the fee.   And after the payment of Stone's
note to it there would also be a balance of his part of the
fees, as the Mann fee of $2,970.62, or his part of it, was
included in the assignment to secure his note.   The first as-
signment of Sudduth to the bank was of $2,500 out of the
amount of their fees, and the second assignment was $5,000
out of the fees, the amount of the fees then claimed by
Stone and Sudduth being between $8,000 and $9,000.   All
the assignments being partial, the assignments to the trust
company, having been made before those to the bank, must.
be adjudged superior to them, unless there is something in
the case to take it out of the rule that the older equity
must prevail over a junior equity, other things being equal.
Millar v. Field, 10 Ky., 108.

The $32,431.69 having been deposited in the bank to the
credit of B. H. Young, president, W. A. Sudduth, and H. L.
Stone, and to be checked out only on checks signed by the
three, Sudduth had no authority, without the consent of

Stone and Young, to authorize the bank to appropriate any part of the money to the payment of his individual debt to it. The purpose of depositing the money, as it was, to the credit of the three, was to prevent any one of them from appropriating it without the consent of the other two. The form of deposit showed this, outside of the parol agreement. The rule is that, if several persons make a deposit to their joint credit, the bank must have the signatures of all of them appended to the check before paying it, or it takes the risk. 2 Morse on Banking, sections 425-436. The money having been deposited with the bank to the credit of Young, Stone, and Sudduth, and on the agreement that it was not to be paid out except on their joint checks, the bank acquired no title to the money, which it thus held in trust, by applying it to the payment of its debt against Sudduth. The law does not permit one who has acquired possession for one pupose thus to gain an advantage; and the legal status of the bank, after the memorandum check was credited to it on the account by the direction of Sudduth, was not different from what it was before. Besides, so much of the deposit as represented the fee of Stone & Sudduth was the property of the firm, and Sudduth could not use it to pay his debt to the bank without the consent of Stone. The bank was charged with notice that one of the partners had no right to apply the partnership assets to the payment of his individual debt, and when it made the appropriation by the direction of Sudduth alone it acquired no greater rights than he had. Jackson v. Holloway, 53 Ky., 133. A partner in dealing with the firm property is a trustee for the firm. The authorities are uniform that, if a depositor of trust funds appropriates them to the payment of his individual debt to the bank, the latter, having notice of the character of the fund, is affected with knowl-

edge of the misappropriaton, and will be compelled to re-
fund. 1 Morse on Banking (4th Ed.), section 317. On the
other hand, each of the partners having consented to the
assignment made by the other to the trust company, these
assignments were, in effect, the assignments of the firm, or
of as much force as if they had been made in the name of
the firm. True, they were partial assignments, but they
were afterwards assented to by the construction company,
when Young, as president, signed the checks sued on. Be-
sides, the construction company is not complaining. No
right of its is affected; and, as we have seen, equity will
protect, as far as it can do so without injury to the debtor,
rights acquired by partial assignments.

The rights of the trust company are not affected by rea-
son of the fact that the bank first gave notice to the debtor
of its assignments. The rule in England is that, as between
successive assignees of the same chose, each being a *bona
fide* purchaser for value, the one who first gives notice to
the debtor will be entitled to preference, although his
assignment is later in date. Some courts in this country
have adopted the same rule, but the weight of authority in
America is to the effect that among successive assignments
the order of time controls. 2 Pomeroy's Equity, section
695; 4 Cyc., pp. 32, 77. The rule of caveat emptor applies
to sales of choses in action as in other sales of personal
property, and, if the seller has sold the thing to one person,
and therefore has no title to pass to a second, the latter
takes nothing by his purchase. The assignee's right of
action is without prejudice to any discount, set-off, or de-
fense the debtor has before notice of the assignment. Ken-
tucky Statutes, 1899, section 474; Civil Code, section 19.
The purpose of the notice is to protect the debtor in such
defenses innocently acquired. It adds nothing to the as-

signee's title, which is perfect as between him and the assignor or those claiming under him from the time of the assignment. While the precise question appears not to have been directly passed on heretofore by this court, the principles announced lead to the conclusion indicated. See Millar v. Field, 10 Ky., 108; Newby v. Hill, 59 Ky., 553; Garrott v. Jaffray, 73 Ky., 415; Beard v. Sharp, 23 R., 1582; 65 S. W., 810. Here no right of the construction company was affected by reason of the failure of appellant to give notice of its assignments to the construction company for a month after appellee's notice was given. The situation of the parties when the notice was given was just as it was a month before, and the construction company had then no defense against the assignor. The failure of appellant to give the notice sooner, having prejudiced no right, was immaterial.

It was held in Lester v. Given, 71 Ky., 357, that the holder of an unaccepted check on a bank might maintain an action thereon. This case has frequently been followed since, and we regard the rule as settled. Merchants' National Bank v. Robinson, 97 Ky., 552, 17 R., 368, 31 S. W., 136, 28 L. R. A., 760; Weiand's Adm'r v. State National Bank, 112 Ky., 310, 23 R., 1517, 65 S. W., 617, 66 S. W., 26, and cases cited. The fact that the bank in this case claimed not to have the money on hand when the checks were drawn is not sufficient to take it out of the rule, for the checks completed the transaction, and were the proper means for bringing to a decision the question in dispute.

Sudduth died insolvent. He was also considerably overdrawn with the firm of Stone & Sudduth. Whether there will be anything coming to him on the settlement of the firm or what will be the rights of the bank in this event, can not be determined in this suit, for neither Stone nor

Sudduth's representative nor his other creditors are before the court.

It is insisted for the bank that the trust company should be required to exhaust the fund arising from the Mann fee before resorting to the bank fund, under the rule that a creditor having a lien on two funds, on one of which another creditor has a junior lien, will be required to exhaust first the fund not incumbered by the junior lien. But that rule has no application, as the bank is not a creditor of Stone's, and as the creditor of Sudduth it can not impose terms on the trust company as the creditor of Stone. What may be the right of the bank to Sudduth's part of the Mann fee can not be determined here, as the necessary parties are not before the court.

Judgment reversed, and cause remanded, with directions to enter a judgment in favor of appellant.